**Michael BARNES, Patrick Seagraves, Individually & d/b/a Barnes-Seagraves Development Co., a Texas Corporation, Appellants,**

v.

**Dennis and Lori WEITZEL, Appellees.**

**No. 2–84–101–CV.**

Court of Appeals of Texas,
Fort Worth.

Oct. 24, 1984.

Donald H. Ray, Fort Worth, for appellants.

Leeper & Priddy, and Timothy G. Chovanec, Fort Worth, for appellees.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

JORDAN, Justice.

Appellees, Dennis and Lori Weitzel, as buyers of a home, brought suit against appellants, as sellers of the home, under the Deceptive Trade Practices Act, asserting that the individual appellants, Barnes and Seagraves, represented to them that all of the equipment and systems in the house "were within Forth Worth Code specifications" when in fact such representations

were false, misleading and deceptive because the air conditioner and water heater did not meet Forth Worth Code specifications. The buyers did not plead a violation of TEX.BUS. & COM.CODE ANN. secs. 17.50 or 17.46 (Vernon Supp.1984), or any other specific violation of the DTPA. Trial to the court resulted in a judgment for the Weitzels for damages in the amount of $3,866.00. The trial court filed findings of fact and conclusions of law.

We reverse and render.

The appeal is on four points of error but our disposition of this case makes it necessary to discuss and decide only the first point of error, which complains of the admission of evidence of certain representations allegedly made to the buyers by the individual sellers, Barnes & Seagraves, in violation of the parol evidence rule. Some recitation of the facts and some of the provisions of the contract involved is necessary.

On February 8, 1983, Dennis Weitzel and Lori Weitzel entered into a written contract with appellants for the purchase of a home in the Arlington Heights section of Forth Worth. Weitzel, an attorney, prepared the contract. Title to the house was in Barnes-Seagraves Development Company, a corporation, and Barnes and Seagraves were officers of the corporation. The house was an older home which had been remodeled or "redone" by the sellers. Contemporaneously with the contract for purchase of the house, the parties to the contract also executed a "Property Condition Addendum".

The contract and its addendum gave the buyers the right to have the house and particularly certain items in the house inspected including, among other things, the plumbing system, water heaters, sewage systems, and the central heating and air conditioning units and ducts. Under these provisions, sellers were responsible for the cost of repairs to the extent of $1,000.00, and if the cost exceeded that figure, the buyers could either pay the excess, accept the property with the limited repairs, or terminate the contract and have their earnest money refunded. The addendum to the contract also provided explicitly that failure of the buyers to have the property inspected within 20 days from the effective date of the contract, would be deemed a waiver of their inspection and repair rights and buyers agreed in such case to accept the house in the condition it was in at the time of execution of the contract.

The buyers did not exercise their rights of inspection and repairs at any time, and in early April of 1983 moved into the house, some three and one-half months before the sale of the house was closed on July 11, 1983. Before the sale was closed, the buyers knew the house had been condemned, because when they moved in, in April, there was a "condemned notice" from the City of Fort Worth on the house.

In October of 1983 the Weitzels filed this suit alleging that Barnes and Seagraves represented to them that the house and all of its equipment "were within Fort Worth Code specifications". In its findings of facts the trial court found that these representations were made by the sellers and that the sellers failed to tell the buyers that the house was not up to Fort Worth Code specifications.

The question presented is whether oral representations concerning the condition of a house are admissible when a contract for the sale of that house provides that if the buyer fails to exercise his right of inspection of the house and its component parts he accepts the property in the condition it was in at the time of execution of the contract. Our answer to this question, under the facts of this case, is that such representations are not admissible.

Generally, extrinsic evidence is not admissible to contradict or vary the terms of a written contract. *Distributors Inv. Co. v. Patton*, 130 Tex. 449, 110 S.W.2d 47, 48 (1937). Appellees contend, however, and we agree, that the parol evidence rule does not operate to preclude evidence of oral representations of fraud or deceptive trade practices made prior to a transaction or the execution of a contract. The theory behind this proposition of law is

that such representations do not change or contradict the terms of a contract but that they, in and of themselves, are actionable if they caused or induced the sale or the execution of the contract. In these instances, the courts hold, the suit is not based on the contract but on the fraud or the particular deceptive trade practice. *See Wagner v. Morris*, 658 S.W.2d 230, 232 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Oakes v. Guerra*, 603 S.W.2d 371, 374 (Tex.Civ.App.—Amarillo 1980, no writ); *American Transfer & Storage Co. v. Brown*, 584 S.W.2d 284, 287–89 (Tex.Civ.App.—Dallas 1979), *rev'd on other grounds*, 601 S.W.2d 931 (Tex.1980); *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ).

■ Relying on these sound principles of law, the buyers of the house in this case argue that they are not suing on the contract for the sale of the house, but on the representations of the sellers that the house conformed to the specifications of the Fort Worth Housing Code. Under the facts of this case there are several flaws in this argument. One problem confronting the buyers, and ignored by them, is that when they moved into their newly purchased home in early April, 1983, three and one-half months before the sale was closed, they knew the house had been condemned by the City because there was a notice to that effect on the house itself. Prior to this time, they had not required the inspection of the house as they had the right to do, and even when confronted with knowledge that the house had been condemned, they did not demand the inspection of the various structural items or systems of the house to which they were entitled under their contract. Weitzel testified that he learned the house "wasn't up to Code specifications" a week or two after closing the sale. It was at this time, according to his testimony, that he talked to Seagraves who said the "house was up to Code".

*Weitzel also testified he knew he had the right to require inspections and repairs, and that there was nothing he found out after closing, that he couldn't have discovered by exercising his contractual right to require inspections and by making demand upon the sellers to repair any defects.*

■ Still another troublesome aspect of the Weitzels' DTPA action is the representation allegedly made by appellant Seagraves. All Weitzel testified to at trial was that Seagraves told him "the home was up to the City of Fort Worth Code." Appellees do not allege that representation, whatever it means, was a violation of any specific section of TEX.BUS. & COM. CODE ANN. secs. 17.41, *et seq.*, nor do they allege when it was made. Neither do they allege or prove that in entering into the contract they relied on Seagraves' representation. It is incumbent upon one claiming deceptive trade practices to plead and prove that he or she relied on the oral representations and that his or her subsequent action was induced by that representation. Without reliance there can be no actionable fraud or deceptive trade practice. The trial court's finding of fact that there was reliance on the representations and on the silence of the sellers, is totally without support in this record.

In support of our holding that in this case extrinsic evidence of the oral representations of the sellers, at a time uncertain in this record, was not admissible to vary the terms and provisions of the written contract between these parties, several recent decisions are helpful. In *Wagner v. Morris*, it was held that the parol evidence rule did not bar admission of evidence that the vendor of real property orally misrepresented the interest rate on a note which the purchasers assumed to purchase vendor's home. *Wagner*, 658 S.W.2d at 232. The vendor in that case had told the purchasers of the home that the interest rate on the vendor's lien note they were assuming was 9.875% when in fact the interest rate was 10.5%. *Id.* at 233. The court held the parol evidence was admissible because the purchasers were not trying to avoid their obligation on the note by proving the existence of some oral agreement relieving them of that liability, but were seeking to

recover damages for the fraud and deceptive trade practice committed against them by the vendor. *Id.* at 232. Although in *Wagner*, oral testimony was admitted, the court pointed out that such testimony did not contradict or vary the terms of the contract and thus the parol evidence rule was not affected. *Id.*

The court in *Wagner* distinguished that case from *Town North Nat. Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978), saying the holding in *Broaddus* was narrow and not applicable in *Wagner*. *Wagner*, 658 S.W.2d at 232. In *Broaddus*, the question was whether, in a suit by one not a holder in due course against the maker of a promissory note, the parol evidence rule prohibits the admission of extrinsic evidence showing that the maker was induced to sign the note by the payee's representations that the maker would not incur liability on the note. *Broaddus*, 569 S.W.2d at 491. It was held that those allegations, even if true, do not constitute fraud in the inducement so as to support an exception to the parol evidence rule. The Supreme Court in *Broaddus*, held that extrinsic evidence to show fraud in such a case is admissible only if there is a showing of some type of *trickery, artifice, or device* employed by the payee in addition to the showing that the payee represented to the maker he would not be liable on the note. *Id.* at 494. *See also Texas Export Development Corporation v. Schleder*, 519 S.W.2d 134, 139 (Tex.Civ.App.—Dallas 1974, no writ).

The majority opinion in *Wagner* said the holding in *Broaddus*, was a narrow one not applicable in *Wagner*. *Wagner*, 658 S.W.2d at 232. The concurring opinion in *Wagner* however, disagreed with the majority that the holding in *Broaddus* was confined only to note cases, saying that the general rule stated in *Broaddus* has long been the rule in Texas, and the rule as stated applies to all written contracts, not merely to promissory notes. *Id.* at 234. (Evans, C.J., concurring.) With that statement in the concurring opinion in *Wagner* we agree, and hold that the rule of *Broaddus*, stated above, applies to the case now

before us. We hold that absent some *trickery, artifice, or device* employed by the sellers in this case, in addition to the oral representations they allegedly made, the buyers are bound by the express terms of their contract and that, by waiving their inspection rights under the contract, they did, as they agreed in the contract, take the property in the condition it was in when the contract was executed.

The oral representations here complained of as being deceptive trade practices entitling the buyers to damages under the DTPA were collateral statements in parol at variance with the written contract entered into, proof of which the law does not admit. If fraud or deceptive trade practices could be predicated upon such statements or intentions, absent a showing of some type of trickery, artifice or device employed by the other party, then any collateral parol agreement might be asserted to contradict, vary, or even abrogate any written contract, under the guise of a fraudulent intent not to perform the parol agreement. The practical effect would be to destroy the parol evidence rule altogether. Written contracts would be reduced to a "meaningless scrap of paper". *Mitcham v. London*, 110 S.W.2d 140, 142 (Tex.Civ.App.—Austin 1937, no writ); *Howeth v. Davenport*, 311 S.W.2d 480, 482 (Tex.Civ.App.—San Antonio 1958, writ ref'd n.r.e.).

The case of *Oakes v. Guerra*, another case involving the sale of a home where the seller made a representation that the plumbing system in the house was in good working condition, is distinguishable from this one. *Oakes*, 603 S.W.2d at 374. In *Oakes*, the court held the seller's representation about the plumbing, made before the contract for the sale of the house was entered into was admissible in spite of a merger clause in the contract which provided that the contract was the entire agreement between the parties and there "are no other agreements, oral or written ...." *Id.* The court there said that the suit was not based on the written contract or on an alleged breach of contract, but on a representation made by Oakes prior to the exe-

cution of the contract that Guerra contends was a deceptive trade practice. *Id.* However, in *Oakes*, there was no inspection privilege given the buyer, at least as far as the opinion shows, and no agreement that if the buyer failed to inspect the house he would accept it in the condition it was then in. We think the situation here is considerably different than the facts and the contract in *Oakes*.

For all of the reasons stated herein, we hold that the trial court erred in admitting evidence of the alleged oral representations that "the house was within the Fort Worth City Code" in violation of the parol evidence rule, because the oral statement contradicted and varied the terms of the written contract, particularly the one providing that if the buyers failed to exercise their right of inspection of the house and its structural systems within a certain time limit, they waived such right and accepted the house in the condition it was in when the contract was signed. Appellant's first point of error is sustained, and we pretermit discussion of the remaining points of error as unnecessary.

The judgment of the trial court is reversed and rendered.