Barry KEYSER, Appellant,

v.

David and Lynette MILLER, Jeff and
Lisa Bartsch, Charlie and Donna Riz-
zo, August and Vivian Augustine, Tom
and Sherry Griswold, John and Gi Gi
Lampson, John and Cheri Muller,
George Tomlinson, and Thomas and
Stacy Watts, Appellees.

No. 01–98–01362–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 3, 2001.

Simon H. Hughes, Houston, for Appel-
lant.

Charles M. Kinsey, Pearland, for Appel-
lee.

Panel consists of COHEN, JENNINGS,
and DUGGAN*, JJ.

* The Honorable Lee Duggan, Jr., retired Jus-
tice, Court of Appeals, First District of Texas
at Houston, participating by assignment.

## OPINION ON MOTION FOR REHEARING

LEE DUGGAN Jr., Justice (Assigned).

Our opinion of February 1, 2001 is withdrawn, and the following opinion is substituted. Counsel for appellees filed a motion for rehearing and, alternatively, motion for rehearing *en banc*. Those motions are denied, the justices unanimously having voted to deny the motion for rehearing *en banc*.

### Background

This is a Deceptive Trade Practices Act (DTPA) case.[1] Appellees[2], residential landowners, sued Dennis Bailey, individually, D.B. Interests, Inc., a Texas corporation doing business as The Homemaker, and appellant, Barry Keyser, for misrepresentations in connection with appellees' purchase of oversized lots in the Oakbrook subdivision located in Pearland, Texas.

The back 20 feet of each lot was subject to an easement held by the Brazoria County Drainage District. Appellees were fully aware of the easement when they purchased the lots in the spring and summer of 1993. In the spring of 1994, some homeowners in Oakbrook received a letter from the Brazoria County Drainage District informing them that all fences in the easement must be removed at the homeowners' expense. Appellees filed this suit in August 1995, claiming that The Homemaker, Dennis Bailey, and appellant, Barry Keyser, represented to appellees that appellees could fence their entire back yard despite the existence of the easement.

Appellees failed timely to join The Homemaker, and all claims against the corporation were dismissed. The trial proceeded against the individual defendants, Dennis Bailey, owner of The Homemaker, and appellant Barry Keyser, The Homemaker's sales agent. The trial court granted a directed verdict, which is not attacked on appeal, as to all claims against Bailey because he did not have any communication with appellees. Based on the jury's response to seven questions, the trial court entered a final judgment against Keyser on September 24, 1998.

### Points of Error

■ Keyser contends he is not individually liable under the DTPA as a matter of law because he acted solely as a corporate agent. We sustain Keyser's point of error because the jury's findings in this case do not support a judgment against Keyser individually.

The jury's significant findings regarding this point of error were as follows: (1) Keyser engaged in a false, misleading, or deceptive act or practice or an unconscionable action or course of action that was a producing cause of damages to the appellees; (2) Keyser did not engage in fraud that was a proximate result of damages to appellees; and (3) at the time such conduct occurred, he was acting solely within the course and scope of his employment with, or on behalf of, or as an agent of, The Homemaker.

### Individual Liability

■ A corporate agent can be liable for his own torts, even if he is acting as an agent. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996) (agent operating a car for principal can be liable along with principal). An agent's individual liability arises

---

1. TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Supp .2001).

2. James and Victoria Burnett were plaintiffs below. The trial court judgment did not award any recovery to James and Victoria Burnett and appellant's brief does not identify James and Victoria Burnett as appellees. Appellees' brief does not identify appellees by name. We do not consider James and Victoria Burnett appellees in this appeal.

when the agent breaches an independent duty of care, i.e., a driver has a duty to drive carefully at all times, whether on duty for his employer or on his own time. *Id.* The question before us is: When does an agent become individually liable for violations of the DTPA?

The Texas supreme court reversed a judgment that imposed personal liability on corporate agents under the DTPA in *Karl and Kelly Co., v. McLerran,* 646 S.W.2d 174 (Tex.1983). In that case, a post-answer default proceeding in which the plaintiffs were required to present evidence on each element of their claim, there was evidence that the individual defendants, officers of the defendant company, made representations to the plaintiffs. *Id.* at 175. As in the present case, there was no evidence of a sham corporate structure or of a failure to follow corporate formalities and no evidence that the individual defendants had acted in their individual capacities. *Id.* Thus, the supreme court held that it was error to render personal judgment against the individual defendants. *Id.*

In *Light v. Wilson,* 663 S.W.2d 813, 814–15 (Tex.1983), decided only months after *McLerran,* the supreme court again found that it was error to hold an individual liable under the DTPA because there was no finding of fact that the defendant ***individually*** violated the DTPA. As in the present case, there were no pleadings in *Light* to support recovery based on alter ego or piercing the corporate veil. *Id.* at 814.[3] The concurring opinion in *Light* asserted that, by recognizing that Light

would be individually liable if there were findings that he violated the Deceptive Trade Practices Act, the majority implicitly overruled *McLerran. Id.* at 815 (Spears, J., concurring). However, to date, the supreme court has not expressly overruled *McLerran.*

The supreme court revisited the issue of an agent's individual liability under the DTPA in *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985).[4] The central holdings in *Weitzel* are (1) parol evidence may form the basis of a DTPA action; (2) intent is not an element of recovery under the DTPA; and (3) reliance is not an element of recovery under the DTPA. *Id.* at 599. The only argument Barnes/Segraves made before the supreme court was that to reinstate the trial court judgment would do violence to all "as-is" contracts. *Id.* However, in order to reinstate the trial court judgment, it was necessary for the supreme court to dispose of additional issues, including whether corporate agents may be individually liable under the DTPA. *Id.*

The trial court in *Weitzel* made findings of fact that the individual defendants each made misrepresentations to the Weitzels. *Id.* at 601. The supreme court found such findings sufficient to support individual liability under the standard established by *Light. Weitzel,* 691 S.W.2d at 601. This case is different. The appellate court decision in *Weitzel* states that Barnes and Segraves were officers of the corporate defendant, Barnes/Segraves Development Company. *Barnes v. Weitzel,* 678 S.W.2d 747, 749 (Tex.App.—Fort Worth 1984),

3.  In this case, appellants pled only that Keyser acted as representative and agent of the other defendants.

4.  More recently, the Supreme Court analyzed an individual insurance agent's liability under the insurance code. *Liberty Mut. Ins. Co. v. Garrison Contractors,* 966 S.W.2d 482 (Tex. 1998). *Garrison* is not dispositive of the case

before us because, in that case, the Supreme Court expressly declined to opine on the issue of whether there may be individual DTPA liability against an insurance company employee and limited its decision to the issue of individual liability under the insurance code. *Id.* at 484 n. 1.

*rev'd,* 691 S.W.2d 598 (Tex.1985). In addition, there was some evidence in the record that at least Segraves was an owner of the corporation. *Weitzel,* 691 S.W.2d at 602 (Gonzalez, J., dissenting) (noting that the city told the Weitzels it would discuss the matter only with the owner, Mr. Segraves). Keyser was not an officer or owner of the corporation.

In the present case, there was more than the mere absence of a finding that Keyser acted in his individual capacity, as was the situation in both *McLerran* and *Light.* Here, the jury actually found that Keyser acted solely within the course and scope of his employment with, or as an agent for, The Homemaker. Thus, although the jury found that Keyser made actionable misrepresentations, it did not find that he individually violated the DTPA, a finding necessary under either *McLerran* or *Light* and recognized by *Weitzel. See McLerran,* 646 S.W.2d at 175; *Light,* 663 S.W.2d at 814; *Weitzel,* 691 S.W.2d at 601.

The parties have brought no case to our attention, and we have found none, in which an individual who was not an officer or director of a company, and who acted solely within the scope of his employment or agency and without the intent to deceive, was found personally liable under the DTPA. This Court has addressed the issue of an agent's liability under the DTPA in at least four decisions.[5]

This Court decided *Wagner v. Morris,* 658 S.W.2d 230 (Tex.App.—Houston [1st Dist.] 1983, no writ), in the months between *McLerran* and *Light.* In *Wagner,* homebuyers sued Morris, an individual, and others for allegedly misrepresenting the interest rate on a note homebuyers assumed to purchase their house. *Id.* at 231. The trial court granted a directed verdict in favor of Morris, having ruled that the admission of evidence of oral and verbal representations made by Morris would violate the parol evidence rule. *Id.* We reversed the trial court on the grounds that homebuyers' case was not controlled by the parol evidence rule because they were not seeking to change or contradict the terms of the note, but to recover damages for Morris's fraud and deceptive trade practices. *Id.* at 232. We further held that the exclusion of the evidence was not harmless, even given the supreme court's recent *McLerran* decision. *Id.* at 233. Although there was no pleading or proof to justify piercing the corporate veil, we noted that *McLerran* did not change the law in Texas that a corporate agent who knowingly participates in a fraudulent act may be held individually liable—even though he performed the act as an agent for the corporation. *Wagner,* 658 S.W.2d at 233. *Wagner* is not controlling in the present case, however, because there was no jury finding here that Keyser knowingly participated in any fraudulent act. In fact, the jury refused to find that Keyser had committed fraud.

▬ This Court followed its *Wagner* precedent in *Barclay v. Johnson,* 686 S.W.2d 334, 336 (Tex.App.—Houston [1st Dist.] 1985, no writ). *Barclay* involved review of a judgment against an individual

5. We have found two cases touching on this issue from other appellate courts: *Wheeler v. Box,* 671 S.W.2d 75 (Tex.App.—Dallas 1984, no writ), and *Medallion Homes, Inc. v. Thermar Investments, Inc.,* 698 S.W.2d 400 (Tex. App.—Houston [14th Dist.] 1985, no writ). While not controlling, both cases are consistent with our reasoning here. In *Wheeler,* officers of a company were found individually liable for their own misrepresentations. 671 S.W.2d at 76–79. In *Medallion Homes,* the president of a company was not individually liable because there was no evidence that he acted in his individual capacity. 698 S.W.2d at 403.

defendant, Barclay, the chairman of the board of the defendant company, on claims of breach of express and implied contractual warranties and for violations of the DTPA in the construction and sale of a home. *Id.* at 235. Barclay argued that he should not be personally liable for representations he made in his capacity as an agent for the defendant company. *Id.* at 336. Overruling Barclay's point of error, we noted:

> It has long been the law in Texas that a corporate agent knowingly participating in a tortious or fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation. Knowing participation in a tortious act will render the corporate agent personally liable, while the mere breach of a corporate contractual obligation will not. It is not necessary that the "corporate veil" be pierced in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing.

*Id.* at 336–37(citations omitted).

Recognizing tension between our decision in *Barclay* and *McLerran*, we distinguished *McLerran* because the plaintiff's cause of action there sounded in contract, not in tort. *Barclay*, 686 S.W.2d at 337. Our *Barclay* decision followed *Wagner* and other cases holding corporate officers liable for knowingly making false representations, without any finding of alter ego or corporate sham. *Barclay*, 686 S.W.2d at 337–38. While our *Barclay* opinion did not rely on a finding that the corporation was a sham, the jury in *Barclay* did in fact make such a finding. *Id.* at 337 n. 1.

In the present case, (1) there was no finding that The Homemaker was a sham; (2) Keyser was not an officer of The Homemaker; and, most important, (3) there was no finding that Keyser knew the representations he made were false. The jury refused to find that he committed fraud. This case is very different from *Barclay*. *Barclay* does not mandate a personal judgment against appellant in this case.

In *Great American Homebuilders, Inc. v. Gerhart*, 708 S.W.2d 8, 9 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), Gerhart prevailed at trial on her claim that Great American Homebuilders, Inc. (GAH) was a sham corporation and that the president of GAH, in his individual capacity, made representations to the appellee and should be personally liable for her losses. We agreed with GAH there was insufficient evidence to support a finding that GAH was a sham corporation, but held there was sufficient evidence to support the trial court's finding that the defendant president was personally liable. *Id.* at 10–11. The trial court found that the president of GAH was notified of the defects in Gerhart's home; that he, *in his individual capacity,* promised he would repair, correct, and cure the defects; and that he did not do so. *Id.* at 11. Our *Gerhart* opinion indicated that the individual defendant's role as a corporate officer and his knowledge of the false statements were important factors in our decision to hold him personally liable. Those factors are not present in this case.

In *Henry S. Miller Co. v. Bynum*, 797 S.W.2d 51, 52 (Tex.App.—Houston [1st Dist.] 1990, *aff'd*, 836 S.W.2d 160 (Tex. 1992),[6] Bynum alleged that the defendant company made misrepresentations to him

6. The Supreme Court did not address the issue of the agent's liability under the DTPA

in affirming this Court's decision.

in leasing him space for the operation of his beauty shop in a shopping center owned and developed by third parties. The trial court found that the defendant company, and the party for whom it was acting as exclusive sales agent, were liable for making misrepresentations to Bynum. *Id.* at 53. We affirmed the trial court's judgment. *Id.* at 58. *Bynum* holds that knowledge is not a prerequisite to an agent's DTPA liability.[7] *Id.* at 55.

*Bynum* is not dispositive of the matter now before us and is distinguishable from this case, as well as from *McLerran, Light, Weitzel, Wagner, Barclay,* and *Gerhart,* in at least one significant way. The agent in question in *Bynum* was not an individual. The issue of individual versus corporate capacity never surfaced. The plaintiff in *Bynum* did not sue the individual salesman who made representations to him on behalf of the salesman's employer. Furthermore, the defendant company apparently never argued that it was necessary for Bynum to pierce the corporate veil or to prove that it was acting beyond the scope of its agency before imposing liability on it as an agent. In explaining our holding in *Bynum,* we noted that the defendant company did not challenge the trial court's findings that it made false, misleading, or deceptive representations that constituted violations of the Deceptive Trade Practices Act. *Id.* at 55. In contrast, in the present case, the essence of Keyser's appeal is that he, in his individual capacity, did not make false, misleading, or deceptive representations. Like its predecessors, *Bynum* does not mandate a per-

sonal judgment against Keyser, an individual agent, in this case.

It is clear from the case law discussed above that a corporate agent may be liable for his own actions that are in violation of the DTPA. This case turns on the distinction between one's own acts and acts innocently undertaken on behalf of one's employer. Appellees point to DTPA section 17.49(a) as support for individual liability against even innocent employees. In that section, the legislature exempted media owners and employees who publish advertisements without knowledge of misleading, false statements therein from liability under the DTPA. Citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981), appellees argue that if all employees are exempt from individual liability, the inclusion of employees in section 17.49 would be superfluous. Our holding today does not preclude a finding of individual liability against employees in all cases. It only requires a finding that the employee acted in his individual capacity in violating the DTPA. Thus, the inclusion of employees in section 17.49 does serve a purpose. It protects media employees (and their employers) from liability based on another's false advertising. It relieves a media employee without either knowledge of the misrepresentation or a financial interest in the advertised product from the need to prove that he acted solely within the scope of his employment. Section 17 .49 is not rendered superfluous by our holding in this case.

It is axiomatic that corporations cannot speak or act except through individuals. If we accept appellees' position in this

---

**7.** Justice O'Connor argued in her dissent in *Bynum* that the decision was a departure from prior case law holding an agent liable under the DTPA, in which at least two of the following factors were present: (1) the corporation was a sham; (2) the agent was an owner, officer, or director of the corporation; (3) the agent knew the statement was false; (4) the agent created the false statement. *Bynum,* 797 S.W.2d at 61 (O'Connor, J., dissenting). No two of those factors exist in the present case, but at least two of them are present in *Wagner, Barclay,* and *Gerhart.*

case, every case against a corporation will involve potential DTPA liability for the individual who spoke the words that constituted the misrepresentation, even though the corporation authorized him to make the representation, even though he was not an officer or director of the corporation but was the lowest employee, and even though he did not know the representation was false. We do not believe the relevant case law requires such a holding.

We conclude that the personal judgment against Keyser, in the absence of any finding that he acted knowingly and in the presence of findings that he acted solely in his capacity as an employee or agent of The Homemaker and that he did not commit fraud, was error. Keyser's second point of error is sustained.

Because Keyser's second point of error is dispositive of this appeal, we do not consider his first, third, and fourth points of error.

The judgment of the trial court is reversed, and a take-nothing judgment is endered in favor of Keyser.