NUMBER
13-00-327-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

 

 



ARTIE G. KINGSTON,                                                            Appellant,

 

                                                   v.

 

JOHN F. HELM, GREENWAY 

DEVELOPMENT, INC.,
AND REAL 

ESTATE INVESTMENT 

CORPORATION,
INC.,                                                           Appellees.

 



 

                         On
appeal from the 28th District Court

                                  of
Nueces County, Texas.

 

 



                                   O
P I N I O N

 

                    Before
Justices Dorsey, Hinojosa, and Castillo

                                  Opinion
by Justice Dorsey

 








The issue in
this case is whether John F. Helm may be held individually liable for conduct
he undertook while acting as a representative for Greenway Development,
Inc.  We hold that the trial court erred
by holding that Helm may not be held so liable. 
Accordingly, we reverse the judgment and remand the cause to the trial
court for further proceedings consistent with this opinion.

Artie Kingston
sued John F. Helm for fraud, DTPA, and negligent misrepresentation stemming
from a transaction wherein Kingston purchased a town home unit from Greenway
Development, Inc. (GDI).  In that
transaction, Kingston spoke with both a sales agent for GDI and with Helm, who
is the president of GDI.  Kingston
alleges that Helm personally made false representations to him regarding the
town home.  The  actual real estate sales contract was between
GDI and Kingston, with Helm signing the sales contract on behalf of GDI,
apparently in his capacity as a corporate officer.

The case went to
trial.  After Kingston presented his
case, the trial court entered a directed verdict that Kingston take nothing
against Helm in his individual capacity. 
That order stated that the evidence was insufficient as a matter of law
to find Helm liable in his individual capacity. 
Kingston appeals this judgment.

                         Standard for Reviewing Directed Verdict








A
directed verdict is appropriate when reasonable minds can draw only one
conclusion from the evidence.  Collora
v. Navarro, 574 S.W.2d 65, 68 (Tex.1978); Villarreal v. Art Inst. of
Houston, Inc., 20 S.W.3d 792, 796 (Tex. App.CCorpus Christi 2000, no pet.).  Where the plaintiff fails to present evidence
in support of a fact essential to her right to recover, or where a defense
against the plaintiff=s cause of action is conclusively proved or
admitted, a directed verdict for the defendant is proper.  Villarreal, 20 S.W.3d at 796.  On review, we examine the evidence in the
light most favorable to the party against whom the verdict was rendered and
disregard all contrary evidence and inferences. 
Qantel Bus. Sys. v. Custom Controls, 761 S.W.2d 302, 303‑04
(Tex. 1988);  Villarreal, 20
S.W.3d at 796.  When reasonable minds may
differ as to the truth of controlling facts, the issue must go to the jury.  Villarreal, 20 S.W.3d at 796.  When no evidence of probative force on an
ultimate fact element exists, or when the probative force of slight testimony
is so weak that only a mere surmise or suspicion is raised as to the existence
of essential facts, the trial court has the duty to instruct the verdict.  Id. 
Moreover, the reviewing court may affirm a directed verdict even if the
trial court=s
rationale for granting the directed verdict is erroneous, provided it can be
supported on another basis.  Id.

                                                    Application

Neither party to
this appeal argues that there is no evidence to support Kingston=s allegations that Helm made certain
misrepresentations to him regarding the town home.  Rather, both sides agree that the only
question presented is whether Helm may be held liable for any such alleged
misrepresentations in his individual capacity, or whether he is shielded from
individual liability because he was acting solely as an agent of a corporation
and not as an individual. 








The appellee
makes essentially two arguments.  First,
Helm argues that he was acting solely in his capacity as corporate officer,
and, therefore, liability may only attach to the corporation, and not to him
individually.  Next, Helm argues that
article 2.21 of the Texas Business Corporations Act now requires that the corporate
veil be pierced in order to hold him individually liable for the causes of
action alleged in Kingston=s suit.  We
disagree with both propositions.

I.  Helms=s Status as Agent for GDI Does Not Insulate Him from Personal
Liability for his Own Tortious Conduct.

 

Generally, a
corporate officer=s acts on the corporation=s behalf are deemed to be acts of the
corporation.  See Leitch v. Hornsby,
935 S.W.2d 114, 117B18 (Tex. 1996). 
Still, the longstanding rule in Texas is that A[a] corporation=s employee is personally liable for tortious acts
which he directs or participates in during his employment.@  Leyendecker
& Assocs., Inc. v. Wechter, 683 S.W.2d 369, 375 (Tex. 1984).[1]   The law is well-settled that a corporate
agent can be held individually liable for fraudulent statements or knowing
misrepresentations even when they are made in the capacity of a representative
of the corporation.  See, e.g.,
Commercial Escrow Co. v. Rockport Rebel, Inc., 778 S.W.2d 532, 541 (Tex.
App.CCorpus
Christi 1989, writ denied).[2]  In fact, this Court has stated:








A corporate officer who knowingly participates in
tortious or fraudulent acts may be held individually liable to third persons
even though he performed the act as an agent of the corporation.  It is not necessary that the >corporate veil= be pierced in order to impose personal liability,
as long as it is shown that the corporate officer knowingly participated in the
wrongdoing.

 

Id. at 541. 
While this legal principle remains intact, a series of Texas Supreme
Court cases decided in the 1980's have left the law in this particular area a
bit muddled.

A.  The Texas Supreme Court has held that
Corporate Agents May Be Held Individually Liable for their Own DTPA Violations.

 

In a 1985 case,
the Texas Supreme Court specifically affirmed the principle that DTPA
misrepresentations made by a corporate agent can subject the agent to
individual liability.  Weitzel v.
Barnes, 691 S.W.2d 598, 601 (Tex. 1985). 
The court held that two corporate officers found to have made
representations that violated the DTPA could be held individually liable for
those representations, even though the representations were made in the course
of a business transaction conducted in the course and scope of their employment
with the corporation.  Weitzel,
691 S.W.2d at 601; see also Kinkler v. Junica, 84 Tex. 116, 19 S.W. 359
(1892); Seale v. Baker, 70 Tex. 283, 7 S.W. 742 (1888).   Liability was predicated on the fact that
the tortious conduct was committed by the agents themselves.  Weitzel, 691 S.W.2d at 601.








The Weitzel court
affirmed a legal principle that had been impliedly recognized in a case decided
two years earlier, Glen W. Light v. J. M. Wilson, 663 S.W.2d 813 (Tex.
1983).  In Light, the
customer of a home building corporation brought DTPA and fraud actions against
the corporation and the corporation=s sole owner. 
Id. at 813.  The trial
court held both Light, individually, and his solely owned corporation jointly
and severally liable for the damages.  Id.
The court of appeals affirmed the trial court=s judgment, but the supreme court reversed, holding
that because Light was not personally involved in the actual business
transaction wherein the DTPA violations were committed, he could not be held
personally liable for the damages that resulted therefrom.  Id. at 814B15.  The
court reasoned that absent pleading and proof supporting some method of
piercing the corporate veil, Light, a mere officer of the corporation, could
not be held personally liable for the DTPA violations made by an agent of the
corporation.  Id.  While the corporation was liable for the
agent=s
conduct, Light was not.  Id.  Though this case did not specifically address
the question of whether Light could have been held personally liable if
he had made the representations himself, its reasoning seemed to imply
that he could.

Certainly
Justice Spears, in his concurring opinion, believed that to be the case,
stating: 

The rule in Texas has always been that an agent is
personally liable for his own torts. 
This rule also applies when the agent is an officer or shareholder of
the principal corporation.

 

Liability in
these cases is based on the agent=s own actions, not his status as agent.  There is no sound reason to treat agents
differently when they violate the Deceptive Trade Practices Act.  It is not relevant that the contract was with
the corporation . . . .

 








Id. at 815 (Spears, J., concurring) (internal
citations omitted).  We believe that to
be a correct statement of the current law.

However, in Light,
the supreme court did not expressly overrule another case handed down earlier
that year which squarely contradicts the position taken by Justice Spears in
his concurrence.  In Karl & Kelly
Co. v. McLerran, the court held that two individual corporate officers
could not be held individually liable for DTPA violations because Aany representations made by [the officers] were
made as agents of the corporation,@ and some evidence that the corporation was used as
the officers=
alter ego would have to be presented in order to hold the officers individually
liable.  Karl & Kelly Co., 646
S.W.2d 174, 175 (Tex. 1983).  When the
Court decided Light ten months after handing down its decision in Karl
& Kelly Co., the majority did not address Karl & Kelly Co.  However, Justice Spears was unequivocal in
his concurrence, stating:

Karl & Kelly Co. was wrongly decided.  This court held that when the contract was
with the corporation, the agents were not personally liable for their own
violations of the Deceptive Trade Practices Act, absent evidence that the
corporation was merely their alter ego. 
The opinion inadvertently overlooked the import of our numerous common
law decisions holding agents liable for their own misconduct, and the argument
was neither briefed nor raised on the motion for rehearing.

 

Although
considerations of stare decisis would normally counsel against
overruling an opinion of this court after such a short time, a clearly
erroneous decision should be corrected.

 

Light,
663 S.W.2d at 815 (Spears, J., concurring).

 








Even though the
court made the statement in its subsequent Weitzel opinion that it was Aimplicit in [its] holding in [Light] that
there can be individual liability on the part of a corporate agent for
misrepresentations made by him,@ Weitzel, 691 S.W.2d at 601 (emphasis
added), Karl & Kelly Co. has never been expressly overruled,
continues to be cited as authority, and this has caused some confusion
regarding the issue.  See, e.g.,
Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996) (citing Karl &
Kelly Co. for the proposition that individual liability arises only when a
corporate officer or agent owes an Aindependent duty of reasonable care to the injured
party apart from the employer=s duty@); Keyser v. Miller, 47 S.W.3d 728, 729B30 (Tex. App.CHouston [1st Dist] 2001), pet. granted, 47
S.W.3d 728 (Tex. Mar. 21, 2002) (noting that the supreme court has, to date,
not expressly overruled Karl & Kelley); Menetti v. Chavers,
974 S.W.2d 168, 172 (Tex. App.CSan Antonio 1998, no pet.) (relying on Karl
& Kelley Co. in holding that corporate officers cannot be held
individually liable for their own DTPA and fraud without some piercing of the
corporate veil); Baker v. Computer Learning Ctr., Inc., No.
14-00-00671-CV, 2001 Tex. App. LEXIS 2748, at *10B11, n.5 (Tex. App.CHouston [14th Dist.], April 26, 2001) (not yet
released for official publication) (noting that Weitzel was a departure
from cases that hold only Aknowing@ violations of the DTPA or knowing
misrepresentations can subject the agent to individual liability).








We believe that
the analysis in Weitzel and in Justice Spears= concurrence in Light governs the outcome of
this case.  We hold that Kingston was not
required to pierce the corporate veil to hold Helm liable in his individual
capacity.  Rather, Helm may be held to
answer  individually for his own tortious
conduct.  Accordingly, the trial court
erred in not allowing the jury to make fact findings on Kingston=s allegations of misrepresentation.

B. Cases
Absolving a Corporate Agent from Personal Liability for Negligent Conduct or
Interference with Contract Do Not Apply to this Case, which is Based on
Allegations of Fraud, Misrepresentation and DTPA Violations.

Another line of
cases holds that corporate officers and agents may not be held individually
liable for tortious conduct when acting solely within the course and scope of
the agent=s
employment.  See e.g., ACS Investors,
Inc. v. McLaughlin, 943 S.W.2d 426, 432 (Tex. 1997) (holding that corporate
officer may not be personally liable for causing corporation to breach contract
with another so long as officer acted in good faith); Leitch, 935 S.W.2d
at 117B18
(holding that corporate agents may not be individually liable for failing to
provide proper safety equipment and safe work environment to subordinate
employee); see also Keyser, 47 S.W.3d at 732 (sales agent not personally
liable for DTPA misrepresentations because they were not Aknowing@ or Aintentional@).  These
cases involve attempts to hold a corporate agent liable for conduct that is
more in the nature of the usual and customary duties required by the particular
job.








The first type
of cases are those based on negligent conduct of the corporate agent.  The rule regarding individual liability for
negligence in the employment context is that a corporate officer or agent can
be liable to others, including other company employees, for his or her own negligence
only when the officer or agent owes an Aindependent duty of reasonable care to the injured
party apart from the employer=s duty.@  Leitch,
935 S.W.2d  at 117.  In Leitch v. Hornsby, the Supreme
court held that two officers of a corporation could not be held individually
liable for an employee=s injury.  See
id. at 117B18.

In Leitch,
Mr. Hornsby sued his employer, Pro Com, and some of its officers for damages
that resulted from an injury he sustained while unloading equipment from a
truck without a lift belt or other safety equipment.  Id. at 114.  The jury found that Pro Com and the
two officers were each negligent and their negligence proximately caused
Hornsby=s
injuries.  Id. at 116.  The trial court entered judgment holding all
three jointly and severally liable.  Id.

The court of
appeals affirmed the trial court=s judgment, holding that a corporate officer may be
personally liable for corporate wrongdoing when that officer is an Aactive participant in the tortious conduct or has
actual or constructive knowledge of the corporation=s tortious conduct.@  Id.
at 116; see Leitch v. Hornsby, 885 S.W.2d 243, 249B50 (Tex. App.CSan Antonio 1994), rev=d, Leitch,
935 S.W.2d 114 (Tex. 1996).  Thus, the
court of appeals concluded, no finding of alter-ego was necessary to pierce the
corporate veil and impose personal liability on the corporate officers because
the officers were merely being held liable for their own negligent
conduct.  Leitch, 885 S.W.2d at
249.








The supreme
court held that went too far.  Leitch,
935 S.W.2d at 117.  The court noted that
while an employer does have a duty to use ordinary care in providing a safe
work place for its employees, that duty is imposed upon the corporation itself,
and not upon the individual corporate officers. 
Id.  The court explained
that the duty to provide a safe workplace is Aa nondelegable duty imposed upon, and belonging
solely to, [the corporation].@  Id.
at 118.  It concluded that A[b]ecause a corporate officer acting on the
corporation=s
behalf does not owe a corporate employee an individual duty to provide that
employee with a safe work place, and because [the individual officers] did not
breach any separate duty, the court of appeals erred in affirming their
individual liability.@  Id.

The classic
example of this principle is that of a corporate agent who negligently causes
an automobile accident while in the course and scope of his employment.  See id.; Schneider v.
Esperanza Transmission Co., 744 S.W.2d 595, 596B97 (Tex. 1987); Le Sage v. Pryor, 137 Tex.
455, 154 S.W.2d 446, 448 (1941).  In such
circumstances, the corporate agent is liable individually for his own negligent
conduct.  Leitch, 935 S.W.2d at
117.  The Aindependent duty@ that gives rise to individual liability is the Aduty of reasonable care to the general public to
operate an automobile in a non-negligent manner.@  See id.  Accordingly, the law is that Aunless alter ego is established, corporate officers
and agents are subject to personal liability for their actions within the
employment context only when they breach an independent duty of care.@  Id.








The analysis in Leitch
requiring a Aseparate,
independent duty@ in order to impose personal liability on a
corporate officer or agent is most appropriate for determining when a corporate
officer or agent may be held personally liable to a subordinate in an
employment context.  Causes of action
rooted in negligent conduct are not directly analogous to causes of action
rooted in fraud and misrepresentation. 
We do not believe that Leitch should be construed to shield a
corporate agent from liability to a third party in cases involving
misrepresentation, fraud and DTPA violations under the theory that Athe agent had no greater duty to refrain from
defrauding and making misrepresentations to the consumer than did the
corporation.@

The other type
of case where corporate officers and agents are shielded from personal
liability is cases where the cause of action is based on a corporate agent=s conduct that causes the corporation to breach a
contractual relationship with a third party or that interferes with a
prospective contractual relation with a third party.  The rule in those cases is that Aan officer or director may not be held liable in
damages for inducing the corporation to violate a contractual obligation,
provided that the officer or director acts in good faith and believes that what
he does is for the best interest of the corporation.@  Maxey v.
Citizens Nat=l. Bank of Lubbock, 507 S.W.2d 722, 726 (Tex. 1974); see also ACS
Investors, Inc., 943 S.W.2d at 432 (affirming the principal and
further fleshing out the rule); Holloway v. Skinner, 898 S.W.2d 793, 795
(Tex. 1995) (same).  The most recent time
the supreme court has spoken on this issue is in ACS Investors, Inc v.
McLaughlin, where the court expounded on the rule and its rationale:








Generally, a corporate officer=s acts on the corporation=s behalf are deemed corporate acts.  See Leitch v. Hornsby, 935 S.W.2d 114,
117B18
(Tex. 1996); Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995).  A corporate officer or director may not be
held liable for inducing the corporation to violate a contractual obligation as
long as he or she acts in good faith on the corporation=s behalf.  See
Holloway, 898 S.W.2d at 795.  A
corporate officer=s potential personal gain is not
determinative.  Holloway, 898
S.W.2d at 796.   A corporate officer's
mixed motivesCto benefit himself and for the corporation to
benefitCare
insufficient to establish liability.  Holloway,
898 S.W.2d at 796;  Restatement (Second) of Torts ' 772 cmt. c. (1979) (it is immaterial that the
corporate agent also profits).  Instead,
the plaintiff must show that the officer acted in a manner so contrary to the
corporation=s
best interests that his or her actions could only have been motivated by
personal interest.  Holloway, 898
S.W.2d at 796.

 

ACS Investsors, Inc., 943 S.W.2d at 432.[3]








Because this
case does not involve causes of action seeking to hold a corporate officer or
agent personally liable for causing the corporation to breach a contract with a
third party, we do not believe ACS v. McGlaughlin is particularly
instructive in resolving the issue of whether Helm may be held personally
liable for his own torts.  Helm is
protected by no privilege (as in interference with contract cases), and the Aindependent duty@ analysis applied in negligence cases does not seem
to apply either.  On the contrary, the
causes of action pled against Helm were allegations of fraud and
misrepresentation.  The general rule is
that directors or officers of a corporation are individually liable to third
parties for their fraudulent acts and for damages resulting from false
representations they make to third persons regarding material matters.  See 19 C.J.S. Corporations ' 546 (1990). 
Rather than applying complex principles of tort law, we believe this
case is governed by longstanding general principles of agency law.  According to the Restatement of Agency, the
general rule is that:

An agent who does an act otherwise a tort is not
relieved from liability by the fact that he acted at the command of the
principal or on account of the principal, except where he is exercising a
privilege of the principal, or a privilege held by him for the protection of
the principal=s interest, or where the principal owes no duty or
less than the normal duty of care to the person harmed.

 

Restatement
(Second) of Agency ' 343 (1958). 
We believe that still to be the law regarding the circumstances under
which a corporate agent may be held liable for misrepresentation and
fraud.  Accordingly, we hold that Helm
may be held liable individually for the torts he is alleged to have personally
committed.

II.  Article 2.21 of the Texas Business
Corporations Act Does Not Overrule Prior Caselaw and Now Require that the
Corporate Veil Must be Pierced in Order to Hold a Corporate Agent Individually
Liable for the Agent=s Own Tortious Conduct.

 








Appellee=s second major argument that the trial court
correctly directed verdict in favor of Helm is that Texas Business Corporations
Act art. 2.21 reversed the caselaw discussed herein and effectively eliminated
individual liability for corporate officers and agents who are shareholders in
the corporation absent evidence that the corporation itself was specifically
used for the purpose of  perpetrating a
fraud.  We do not believe the scope of
article 2.21 is that broad.  The Texas Supreme
Court has not addressed this issue, though we note that petition has been filed
in a case that does, Pabich v. Kellar, 71 S.W.3d 500, 508 (Tex. App.CFort Worth 2002, pet. filed April 15, 2002).

Article 2.21
states, in relevant part:

A holder of shares, an owner of any beneficial interest in shares, or
a subscriber for shares whose subscription has been accepted, or any affiliate
thereof or of the corporation, shall
be under no obligation to the corporation or to its obligees with
respect to . . . any contractual obligation of the corporation or any
matter relating to or arising from the obligation on the basis that the
holder . . . is or was the alter ego of the corporation, or on the basis of actual
fraud or constructive fraud, a sham to perpetrate a fraud, or similar theory,
unless the obligee demonstrates that the holder . . . caused the corporation to
be used for the purpose of perpetrating and did perpetrate an actual fraud on
the obligee primarily for the direct personal benefit of the holder, owner,
subscriber, or affiliate.

 

Tex. Bus. Corp. Act Ann. art. 2.21(A) (Vernon Supp. 2002) (emphasis added).

 








Article 2.21
provides the exclusive method for piercing the corporate veil in Texas.  The Bar Committee notes following article
2.21 state that the statute was Aintended to provide for an exclusive statement as
to when the corporate veil may be pierced in the context of contractual
obligations . . . [and] should also be considered by analogy in the context of
tort claims . . . and reflects a clear public policy that the corporate fiction
should be recognized absent compelling circumstances to the contrary.@  Tex. Bus. Corp. Act. art. 2.21, Bar
Committee NotesC1996 (Vernon Supp. 2002).  However, we maintain that the case at bar
does not involve piercing of the corporate veil.  Several features of the actual language used
in the statute lead us to conclude that it was not intended to absolve a
corporate agent from liability for the agent=s own tortious conduct, but is limited to a very
specific class of lawsuits.

First, by its
terms, article 2.21 limits the class of persons (or entities) it protects.  It seems clear that it was intended to
insulate a corporation=s shareholdersCi.e.,
someone who has an ownership interest in the corporation.  The first sentence of article 2.21(A)
restricts the statute=s applicability to holders of shares, owners
of any beneficial interest in shares, subscribers for shares whose
subscription has been accepted, or any affiliate thereof or of the
corporation.  A Ashare@ is a unit of ownership of the corporation.  See
Tex. Bus. Corp. Act Ann. art. 1.02(A)(23).  A A>shareholder= or >holder of shares= means the person in whose name shares issued by
the corporation are registered.@   Id.
art. 1.02(A)(22).  A subscriber is one
who offers to buy shares in a document called a subscription.  Id. art. 1.02(a)(25)B(26).  AAffiliate@ is not specifically defined in the statute, but
the common meaning of that word is Aa person, organization, or establishment associated
with another as a subordinate, subsidiary, or member.@  American Heritage Dictionary of the English
Language (online version) (Houghton
Mifflin 2000).  Thus, the first sentence
limits the scope of article 2.21 to people who own shares or have some
relationship with one who owns shares in a corporation.








The Bar
Committee comments support that interpretation, stating that article 2.21 was
amended to Aestablish
a clear legislative standard under which the liability of a shareholder for
the obligations of a corporation is to be determined in the context of contractual
obligations and all matters relating thereto.@  Tex. Bus. Corp. Act Ann. art. 2.21,
Cmts. of the Bar CommitteeC1996 (Vernon Supp. 2002) (emphasis added).  We infer that article 2.21's restriction to shareholders
is significant in understanding the scope of the statute.  The statute seeks to protect shareholdersCi.e.,
persons having some kind of ownership interest in the corporationCfrom being held personally liable for corporate
obligations.  We believe that identifying
shareholders or owners as the only class of persons protected by the statute
indicates that the kind of liability it protects them from is liability that
would exist by virtue of the mere status as an owner of or shareholder in the
corporation.  We do not believe that this
article was intended to shield a corporate officer or agent who commits
tortious conduct merely because the officer or agent also possesses an
ownership interest in the corporation. 
This leads to our next point.








By its terms,
article 2.21 limits the types of suits to which it applies.  It states that the statute=s protection is limited to suits that attempt to
impose corporate obligations upon shareholders or owners Aon the basis that the holder . . . is or was the alter ego of the corporation, or on
the basis of actual fraud or constructive fraud, a sham to perpetuate a fraud,
or similar theory.@  Id.
art. 2.21(A)(2) (emphasis added).  In
other words, the statute applies to suits which attempt to impose individual
liability on a corporate shareholder not on the basis of the shareholder=s own actions, but rather on the basis of the
shareholder=s
mere status as shareholder.  Most likely,
the Asimilar
theory@
referred to in the statute is one of the theories listed in Castleberry v.
Branscum, 721 S.W.2d 270 (Tex. 1986). 
In Castleberry, the Texas Supreme Court held that the corporate
veil may be pierced and corporate shareholders may become personally liable for
corporate obligations in a variety of circumstances, including: (1) when the
corporate fiction is used as a means of perpetrating a fraud; (2) where a
corporation is organized and operated as a mere tool or business conduit of
another corporation; (3) where the corporate fiction is resorted to as a means
of evading an existing legal obligation; (4) where the corporate fiction is
employed to achieve or perpetrate a monopoly; (5) where the corporate fiction
is used to circumvent a statute; and (6) where the corporate fiction is relied
upon as a protection of crime or to justify wrong.  Castleberry, 721 S.W.2d at 272.  The Bar Committee notes to article 2.21 state
that it was enacted Ain response to Castleberry,@  for the
purpose of establishing a Aclear legislative standard under which the
liability of a shareholder for the obligations of a corporation is to be
determined in the context of contractual obligations and all matters relating
thereto.@  Tex. Bus.
Corp. Act Ann. art. 2.21, Bar
Committee NotesC1996 (Vernon Supp. 2002).













Finally, the
language of the statute further restricts the kinds of liability it protects
shareholders from.  Article 2.21 limits
shareholder liability for Aany contractual obligation of the corporation or
any matter relating to or arising from the [contractual obligation].@  Id.
art. 2.21(A)(2).  While the Bar Committee
notes indicate that the statute should be applied Aby analogy to tort obligations,@ we do not believe that courts should be too
liberal in determining that a cause of action Arelates to or arises from a corporation=s contractual obligation.@  See
id.  To define fraud, fraudulent
inducement, fraud in a real estate transaction, negligent misrepresentation and
DTPA claims as Amatters relating to or arising from a corporation=s contractual obligation,@ and thus require plaintiffs to meet article 2.21's
requirements in order to hold the individual tortfeasor liable extends the
statute beyond its intended and logical reach. 
See Crum & Forster, Inc. v. Monsanto Co., 887 S.W.2d 103, 146
(Tex. App.CTexarkana
1994, no writ) (refusing to extend article 2.21 to preclude liability in
situations in which liability is based upon Asomething other than a contractual obligation@).  Because
the statute requires the corporate veil to be pierced in order to impose
personal liability upon a shareholder, defining those causes of action as Amatters arising from contractual obligations of the
corporation@
would place a high burden on a plaintiff seeking to hold a corporate officer or
agent liable for his own conduct, and add a layer of protection to any corporate
officer or agent who commits a tort merely because he or she also possesses an
ownership interest in the corporation. 
We cannot imagine the Legislature intended such a departure from the
general principle that an agent is always liable for his or her own tortious
conduct, particularly in light of the recognized principle that the legal duty
not to fraudulently procure a contract is separate and independent from the
duties established by the contract itself. 
See, e.g., Formosa Plastics Corp. USA  v. Presidio Eng=rs and Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998).

In conclusion,
we perceive this case to be one involving agency law; not one regarding
disregarding the corporate fiction.  We
hold that Kingston is not required to meet the standard for piercing the
corporate veil set forth in article 2.21 in order to impose personal liability
upon Helm.  This case involves an agent
of a corporation being held accountable as an individual for his own individual
conduct.  The fact that Helm is a shareholder
or an owner or an officer of GDI is not relevant to the question of whether he
can be held individually liable for his own tortious conduct.  The longstanding law in Texas is clear that
he can be held so liable, and we do not believe that article 2.21 was intended
to insulate corporate agents from individual liability for their own tortious
conduct.[4]








Accordingly, we
hold that the trial court erred in entering directed verdict finding that Helm
may not be held individually liable for torts he committed while acting as an
agent or an officer of GDI.  We thus
REVERSE and REMAND for further proceedings consistent with this opinion.

______________________________

J. BONNER
DORSEY,

Justice

 

Publish.

Tex.
R. App. P. 47.3(b).

 

Opinion delivered and filed

this 25th day of July, 2002.











[1]Accord
Light v. Wilson, 663 S.W.2d 813, 815 (Tex. 1983) (Spears,
J., concurring); Taiwan Shrimp Farm v. U.S.A. Shrimp Farm, 915 S.W.2d
61, 73 (Tex. App.CCorpus Christi
1996, writ denied); McIntosh v. Copeland, 894 S.W.2d 60, 63 (Tex. App.CAustin
1995, writ denied); Holberg v. Teal Constr. Co., 879 S.W.2d 358, 360
(Tex. App.CHouston [14th
Dist.] 1994, no writ); Portlock v. Perry, 852 S.W.2d 578, 582 (Tex. App.CDallas
1993, writ denied); Remenchik v. Whittington, 757 S.W.2d 836, 839 (Tex.
App.CHouston [14th
Dist.] 1988, no writ) (noting that A[i]n
these circumstances, it is not necessary that the corporate veil be pierced or
even discussed@); Great
Amer. Homebuilders, Inc. v. Gerhart, 708 S.W.2d 8, 10B11
(Tex. App.CHouston [1st
Dist.] 1986, writ ref=d n.r.e.).





[2]Accord
Keyser v. Miller, 47 S.W.3d at 730B31; U.S.
Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214,
221 (Tex. App.CWaco
1993, writ denied) (holding corporate agent liable for Aknowing@
participation in misappropriation); Grierson v. Parker Energy Partners,
737 S.W.2d 375, 377B78
(Tex. App.CHouston
[14th Dist.] 1987, no writ) (holding corporate agent can be held personally
liable if agent knowingly breached fiduciary duty); Barclay v. Johnson,
686 S.W.2d 334, 336B37
(Tex. App.CHouston
[1st Dist.] 1985, no writ) (holding corporate agent personally liable for false
representations); Great American Homebuilders, Inc. v. Gerhart, 708
S.W.2d at 10B11; see
also Restatement (Second) of Agency
' 348
(1958).





[3]Unfortunately,
in ACS Investors, Inc., the court used Leitch (a case involving
personal liability of the corporate agent for negligent conduct) and the Restatement
(Second) Torts ' 772,
cmt. c, in the course of explaining the rule regarding a corporate agent=s
individual liability for interference with a contract of the corporation.  Neither seems to really apply, and creates
the possibility of blurring the various rules for when a corporate agent may be
held liable for his own conduct.  We
believe a better statement of the rule regarding when a corporate agent may be
held liable for interfering with a corporate contract is found in Corpus
Juris Secundum, and views the issue in terms of Aprivilege@:

 

One
interested as officer in a corporation is privileged to induce the corporation
to breach a contract, provided that no improper means are used, he acts in good
faith to protect the corporation, and does not act for his own personal
benefit.

 

19 C.J.S. Corporations
' 547
(1990).  The Ahonest
advice@
doctrine relied upon by the court in ACS Investors, Inc. for clarifying
the rule in interference with contract cases does not seem particularly
applicable.  The comment states that the
doctrine is intended to Aprotect
the public and private interests in freedom of communication and friendly
intercourse.@ Restatement (Second) Torts ' 772,
cmt. c (1979).  The context does not seem
to indicates that this doctrine was intended to shield corporate officers and
agents in the course of their employment by the corporation.  Rather, examples of persons protected by the Ahonest
advice@ rule
listed in the commentary are: lawyers, doctors, clergymen, bankers, investment,
marriage or other counselors, and an efficiency expert. Corporate officers,
employees or other agents are not listed. 
The actual Restatement rule containing the Ahonest
advice@
doctrine which was relied upon by the ACS court states:

 

One
who intentionally causes a third person not to perform a contract or not to
enter into a prospective contractual relation with another does not interfere
improperly with the other=s
contractual relation, by giving the third person (a) truthful information, or
(b) honest advice within the scope of a request for the advice.

 

Restatement (Second) of Torts ' 772
(1979).  Our position is that this is not
particularly appropriate to apply to corporate officers or agents, though it
probably achieves the same result as the statement of the rule we prefer.





[4]Accord
Pabich v. Kellar,71 S.W.3d at 508 (where, after the court
conducted analysis of whether corporate officer was liable under article 2.21,
court stated: AOur
inquiry does not end, however, with the determination that Pabich is not liable
[under art. 2.21] because a corporate officer may still be held individually
liable for a corporation=s
tortious conduct if he knowingly participates in the conduct or has either
actual or constructive knowledge of the tortious conduct@); see
also Menetti v. Chavers, 974 S.W.2d 168, 174 (Tex. App.CSan
Antonio 1998, no pet.) (court held that 2.21 was applicable to claims of DTPA,
fraud, breach of contract and piercing of the corporate veil when shareholder=s
liability is only in capacity as shareholders, and not as individual actors who
committed the tortious conduct); cf. Love v. State, 972 S.W.2d 114, 118
(Tex. App.CAustin
1998, pet. denied) (holding state is not required to satisfy article 2.21 in
order to hold shareholders individually liable in administrative suit seeking
penalties for failure to plug inactive oil and gas wells); but see Texas‑Ohio
Gas, Inc. v. Mecom, 28 S.W.3d 129, 133B34 (Tex. App.CTexarkana
2000, no pet.) (holding that suit against vice-president and manager of
corporation for fraud, fraudulent inducement, negligent misrepresentation, and
tortious interference with a contract was subject to requirements of article
2.21, which provide the Aexclusive
means for recovery against shareholders of a corporation for such claims@
because such claims Aattempt[]
to hold shareholders personally liable for a >matter
relating to or arising from= a contractual obligation of
the corporation@).