Russell LEITCH, Hal Crews, and Pro Com Marketing Services, Inc., Petitioners,

v.

Grady HORNSBY, Respondent.

No. 94–1323.

Supreme Court of Texas.

Argued Sept. 5, 1996.

Decided Dec. 13, 1996.

**116**

Charles M. Jefferson, San Antonio, for Petitioners.

Charles A. Nicholson, San Antonio, for Respondent.

BAKER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, CORNYN, ENOCH and OWEN, Justices, join.

Grady Hornsby sued his employer, Pro Com Marketing Services, Inc., for damages for back injuries Hornsby suffered when he lifted a cable reel. Hornsby also joined Russell Leitch and Hal Crews, officers, directors, and stockholders of Pro Com as defendants. The trial court rendered judgment on a jury verdict against Pro Com, Leitch, and Crews, jointly and severally for almost $700,000. The court of appeals affirmed the trial court's judgment. 885 S.W.2d 243.

This appeal raises the issue of the corporate officers' personal liability and whether there is some evidence of negligence and causation for Hornsby's injury. We conclude the court of appeals erred in affirming the trial court's judgment holding Leitch and Crews individually liable. We also conclude that Hornsby produced no probative evidence to prove causation between his back injury and Pro Com's alleged negligence. Accordingly, we reverse the court of appeals' judgment and render judgment that Grady Hornsby take nothing from Pro Com Marketing Services, Inc., Russell Leitch, and Hal Crews.

## I. BACKGROUND

### A. FACTS

Pro Com is a cable television servicing company. In 1989, Pro Com began installing cable wire for households to which it had sold cable services. When it began installation of cable wire, Pro Com hired Grady Hornsby to be its technical manager. As technical manager, Pro Com placed Hornsby in charge of cable installation, including the training and supervision of other Pro Com employees. While preparing to go to a job site for a Pro Com contract, Hornsby began unloading equipment from his truck including a reel of cable. Hornsby did not wear a lift belt, nor did he have a dolly available to unload the cable reel. The reel weighed about 65 pounds. When he lifted the reel he injured his back.

Before working for Pro Com, Hornsby had worked for eight to ten different cable companies. None of these companies had provided lifting belts for its employees. Hornsby testified some of his previous employers had provided their workers with safety belts but not lifting belts. Some of the companies had supplied dollies for their employees. Hornsby requested Pro Com to furnish some of this equipment. Pro Com refused to do so.

### B. THE TRIAL AND APPEAL

At the time of Hornsby's injury, Pro Com did not subscribe to workers' compensation insurance. Consequently, Hornsby sued Pro Com, Leitch, and Crews for common law negligence. Hornsby asserted that all three defendants did not provide a safe work place and equipment, did not provide proper equipment, did not provide a protective lift belt, and did not give safety instructions and training. The jury found that Hornsby's injury occurred while he acted as a Pro Com employee, that the negligence of Pro Com, Leitch, and Crews proximately caused Hornsby's injuries, that Hornsby's damages were $594,000, and that Pro Com was not the alter ego of Leitch and Crews. The trial court rendered judgment on the jury verdict and held Pro Com, Leitch, and Crews jointly and severally liable for the damages the jury awarded together with prejudgment interest. The court of appeals affirmed the trial court's judgment.

## II. OFFICER'S LIABILITY

Leitch and Crews contend that the court of appeals erred in affirming the trial court's

judgment that they were individually liable for Hornsby's injuries. The court of appeals noted that the jury found both Leitch and Crews guilty of negligence proximately causing Hornsby's injury. The court of appeals held that a corporate officer may be personally liable for corporate wrongdoing when that officer is an active participant in the tortious conduct or has actual or constructive knowledge of the corporation's tortious conduct. The court of appeals observed that imposing personal liability on a corporate agent presupposes the agent participated in the wrongdoing or that the agent had knowledge of and consented to the wrongdoing. Leitch and Crews argue that this presupposition is erroneous because Leitch and Crews, as corporate officers, owed no individual duty to Hornsby as a Pro Com employee.

Hornsby argues that he sued Leitch and Crews as individuals and not as corporate officers. He asserts that because the jury found both Leitch and Crews individually liable the court of appeals correctly affirmed the trial court's judgment. Hornsby argues that Leitch and Crews are individually responsible because of their positions at Pro Com, their knowledge of the work, and the fact that an employer has a nondelegable and continuous duty to an employee to provide a safe place to work.

## A. APPLICABLE LAW

■ An employer is not an insurer of its employees' safety at work; however, an employer does have a duty to use ordinary care in providing a safe work place. *I.M. Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995). For decades, this Court has recognized that this duty is an implied part of the employer-employee relationship. *See Missouri, Kan. & Tex. Ry. v. Hannig,* 91 Tex. 347, 43 S.W. 508, 510 (1897). When the employer is a corporation, the law charges the corporation itself, not the individual corporate officer, with the duty to provide the employee a safe workplace. *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 401 (1934), *disapproved on other grounds,* 725 S.W.2d 712, 714 (Tex.1987); *Harrison v. Oliver,* 545 S.W.2d 229, 230 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd); *see*

*also J. Weingarten, Inc. v. Moore,* 449 S.W.2d 452, 453 (Tex.1970) (no liability against corporate agent absent individual duty to fellow employee).

■ A corporate officer or agent can be liable to others, including other company employees, for his or her own negligence. However, individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty. *See Colwell,* 909 S.W.2d at 868; *Karl & Kelly Co. v. McLerran,* 646 S.W.2d 174, 175 (Tex.1983); RESTATEMENT (SECOND) OF AGENCY § § 343, 350 (1958). For example, an agent whose negligence causes an auto accident may be held individually liable along with his or her employer when driving in the course and scope of employment. *See Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596–97 (Tex.1987)(liability for negligent entrustment "rests upon the combined negligence of the owner [employer] ... and negligence of the driver"); *Le Sage v. Pryor,* 137 Tex. 455, 154 S.W.2d 446, 448 (App.1941) (employer and employee subject to liability for auto accident). Because the agent owes a duty of reasonable care to the general public regardless of whether the auto accident occurs while driving for the employer, individual liability may attach. *See Schneider,* 744 S.W.2d at 596–97.

■ Thus, unless alter ego is established, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care. *See Colwell,* 909 S.W.2d at 868; *Fort Worth Elevators,* 70 S.W.2d at 401; *see also Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex.1995).

## B. APPLICATION OF LAW TO FACTS

■ Here, the jury found that Pro Com, Leitch, and Crews were each negligent and responsible for Hornsby's injuries. However, the jury also found that Hornsby was Pro Com's employee and failed to find Pro Com was the alter ego of Leitch and Crews. The court of appeals held that a corporate officer is not shielded from personal liability and that an officer may be found negligent for the officer's own acts. The court of appeals

noted that there was evidence that Leitch and Crews, officers and shareholders of Pro Com, took an active role in the managing the daily operations of Pro Com, Hornsby's employer. The court of appeals concluded that when an officer performs duties for his principal, the officer owes a duty to avoid negligence, whether active or passive. Based on the evidence in the record and the legal conclusions it reached, the court of appeals affirmed the trial court's judgment. We conclude the court of appeals erred because it did not properly analyze the source of the duty breached in this case.

Leitch and Crews were not Hornsby's employers. The jury found that Pro Com was Hornsby's employer. As Hornsby's employer, Pro Com had the nondelegable duty to use ordinary care in providing Hornsby with a safe workplace. *Werner*, 909 S.W.2d at 869; *Harrison*, 545 S.W.2d at 230. However, the jury did not find that Pro Com was the alter ego of Leitch and Crews. Accordingly, under the record and as a matter of law, Leitch and Crews were acting within their capacities as officers of Pro Com and not in their individual capacities. The alleged actions by Leitch and Crews, whether active or passive, were actions of a corporate officer on behalf of Pro Com and deemed Pro Com's acts. *Holloway*, 898 S.W.2d at 795. Leitch and Crews had no individual duty as corporate officers to provide Hornsby with a safe workplace. The duty to provide a safe workplace was a nondelegable duty imposed on, and belonging solely to, Pro Com. *Fort Worth Elevators*, 70 S.W.2d at 401; *Harrison*, 545 S.W.2d at 230. The record does not show a breach of any other duty by Leitch and Crews. Because a corporate officer acting on the corporation's behalf does not owe a corporate employee an individual duty to provide that employee with a safe work place, and because Leitch and Crews did not breach any separate duty, the court of appeals erred in affirming their individual liability. We hold Leitch and Crews are not individually liable.

## III. NEGLIGENCE AND CAUSATION

Although Hornsby alleged Pro Com did not provide proper safety instructions and training, Hornsby's evidence focused on Pro Com's failure to provide proper lifting equip-

ment. Hornsby produced no evidence of lack of proper training. Moreover, Hornsby testified that as Pro Com's technical manager, he knew how to properly lift cable wire. Pro Com, Leitch, and Crews contend that the basis of Hornsby's complaint is that he would not have injured his back if he had been furnished a lift belt or other equipment to lift the cable reel out of his truck. They argue that the evidence shows that business custom in the cable installation industry is that the industry does not provide its installers with lifting equipment such as lift belts. They assert this is evidence that they were not negligent when they declined to provide Hornsby with lifting equipment. Pro Com, Leitch, and Crews also argue that, assuming they owed a duty to furnish Hornsby with lifting equipment, their breach of such a duty was not the cause of Hornsby's injury. Finally, they assert Hornsby did not present any evidence to show his injury would not have happened if he had been provided with and had been using a lift belt or other lifting equipment.

### A. APPLICABLE LAW

#### 1. No Evidence—Standard of Review

When we review a no evidence claim, we consider only the evidence and inferences tending to support the jury's fact finding. We disregard all contrary evidence and inferences. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275–76 (Tex.1995); *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). If there is any evidence of probative force to support the finding, we overrule the point of error and uphold the jury's finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). If there is more than a scintilla of probative evidence in the record to support the finding, a no evidence challenge fails. *Stafford*, 726 S.W.2d at 16.

#### 2. Proximate Cause

A plaintiff must plead and prove that the defendant's negligence is the proximate cause of his injury. Proximate cause consists of cause in fact and foreseeability. *See Farley v. M M Cattle Co.*, 529 S.W.2d

751, 755 (Tex.1975). The foreseeability of a back injury in connection with regular lifting of heavy objects is judged by a reasonable person standard. *See Exxon Corp. v. Roberts,* 724 S.W.2d 863, 867 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). In a case like this one, where there is no medical testimony linking the alleged negligence to the injury, a claimant must provide probative evidence, through expert testimony, connecting the injury to the alleged negligence. *See Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970); *Sears, Roebuck & Co. v. Hurst,* 652 S.W.2d 563, 565 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Orkin Exterminating Co. v. Davis,* 620 S.W.2d 734, 736–37 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *cf. Royal Globe Ins. Co. v. Suson,* 626 S.W.2d 161, 163–64 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.)(holding that expert testimony not required to establish link between back injury and on-the-job incident). Whether proper lifting equipment would have prevented the injury is not a question that can be answered by general experience. *See Lenger,* 455 S.W.2d at 706. Incompetent opinion testimony is not evidence, and a finding supported only by such testimony cannot survive a no evidence challenge. *See Missouri Pac. R.R. Co. v. Buenrostro,* 853 S.W.2d 66, 77 (Tex.App.—San Antonio 1993, writ denied); Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960). Proof of causation cannot "turn upon speculation or conjecture." *Lenger,* 455 S.W.2d at 706.

**B. Application of Law to Facts**

■ Hornsby pleaded that Pro Com did not provide him with proper equipment to lift heavy objects and other gear related to the business. Hornsby testified that he had to carry heavy reels of cable for Pro Com. Hornsby said he frequently requested safety equipment from Pro Com such as dollies, lift belts or truck mounted reels. One of Hornsby's co-workers testified that he and Hornsby requested dollies and holders for the spools. Hornsby also testified that he had previously worked for eight to ten cable installation companies and that none of those companies had furnished lift belts. The evidence also showed that Hornsby and others requested Pro Com to provide lift belts, dollies, or truck mounted reels and Pro Com refused to do so.

We assume, without deciding, that Pro Com had a duty to provide Hornsby with proper lifting equipment. We also assume, without deciding, that Hornsby's back injury was caused by lifting the cable reel. Despite these assumptions, the record is clear, and we conclude, that no probative evidence exists that Hornsby's injury was proximately caused by the breach of any such duty.

The record shows Hornsby's treating physician testified that lifting the cable reel caused Hornsby's back injury. However, in response to a question about whether Hornsby's injury could have been prevented by the use of a lift belt, Hornsby's treating physician testified: "I would be unable to comment. I don't think there is anything that would be available to say yes or no in that respect." This testimony is no evidence of causation. *See Lenger,* 455 S.W.2d at 706–07.

Hornsby's co-worker, Larry Whidden, did not witness the incident in question. Hornsby did not offer Whidden as an expert witness. Nevertheless, Whidden expressed his opinion that the use of a lift belt would have eliminated Hornsby's injury. Pro Com argues that Whidden's testimony is no evidence, because as Pro Com objected at trial, Whidden was not qualified to testify about whether lifting equipment would have prevented Hornsby's injury. We agree. Whidden's testimony has no probative worth and is not proper evidence of causation because his testimony amounts to mere conjecture, and because he was not qualified to testify about what type of lifting devices might have prevented Hornsby's injuries. *See* Tex. R.Civ.Evid. 702; *Lenger,* 455 S.W.2d at 706; *Buenrostro,* 853 S.W.2d at 77. Therefore, this is no evidence to support the jury's verdict.

There is no other evidence in the record connecting Hornsby's injury with Pro Com's failure to provide proper lifting equipment. Thus, we conclude the court of appeals erred in holding that there was legally sufficient evidence to support the jury's finding that

Pro Com's failure to furnish appropriate lifting equipment was a cause in fact of Hornsby's back injury.

## IV. CONCLUSION

Because the duty to furnish a safe work place is the duty of Pro Com, Hornsby's employer, and not that of Pro Com's employees in their individual capacities, we hold that the court of appeals erred in holding Leitch and Crews individually liable for Pro Com's alleged negligence. We also hold that Hornsby did not provide legally sufficient evidence of causation between his back injury and Pro Com's alleged negligence. Accordingly, the court of appeals erred in holding that Hornsby carried his burden of proof on the causation issue.

Therefore, we reverse the court of appeals' judgment. We render judgment that Grady Hornsby take nothing from Pro Com Marketing Services, Inc., Russell Leitch, and Hal Crews.

ABBOTT, J., filed a concurring opinion.

SPECTOR, J., not sitting.

ABBOTT, Justice, concurring.

I agree with the Court's judgment and with most of its opinion. I write separately only to provide a more detailed discussion of why no evidence supports the jury's verdict.

Because of constitutionally mandated limitations on our review of facts, this Court should tread very carefully whenever we are requested to determine that no evidence supports a jury's verdict. Well-established law guides our evaluation of a no evidence point of error. The Texas Constitution requires that "the decision of [the courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error." TEX.CONST. art. V, § 6. This provision "restrict[s], in express terms, the jurisdiction of the supreme court, and ... confine[s] it to questions of law." *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69, 69 (1898); *see Coulson v. Lake LBJ Municipal Util. Dist.*, 781 S.W.2d 594, 597 (Tex.1989) (acknowledging that this Court has no jurisdiction to undertake factual sufficiency review); *Gulf, Colorado & Santa Fe Ry. Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 938 (1958) (Texas Supreme Court cannot conduct factual sufficiency review); *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226, 227 (1947) ("the Supreme Court is not invested with the power to determine facts."); *see also* Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1045, 1139 (1993) (constitutional "provision ... acts as a limitation on the judicial authority of the supreme court and confines its jurisdiction to questions of law").

When determining a no evidence point of error in accordance with these constitutional limitations, this Court "must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *see Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914). If there is any evidence of probative force to support the finding, we overrule the point of error and uphold the jury's finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). If more than a scintilla of evidence exists, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The limitations on this Court's ability to review evidence do not mandate, however, that we abstain from reviewing a jury's verdict when a party fails to offer *any* evidence on an element of a cause of action. Simply because a party presents several days of testimony for the jury's consideration does not mean that this Court is exceeding its constitutional limitations by requiring that the testimony amount to a scintilla of evidence in support of the legal elements of the cause of action. While jurors are vested with the authority to evaluate the evidence and weigh the credibility of witnesses, some legally sufficient evidence must nevertheless exist to support their verdict.

Mr. Hornsby claimed that the defendants were negligent by failing to supply him a lift belt and a dolly to help him lift the cable reel and by failing to provide a safe place to work. To succeed on his negligence claims, Mr. Hornsby had to offer at least some evidence establishing that the defendants' alleged acts or omissions proximately caused his injuries.

The record shows that twelve witnesses were called to testify at trial. Only two of them, Dr. Paul Geibel and Larry Whidden, were asked a question concerning proximate cause. Dr. Geibel provided the following testimony:

Q. And could you please tell the jury what in your opinion is the cause of his [Mr. Hornsby's] injuries?

A. Well, he has been symptomatic from the three-level disc herniating in his back and the spondylolisthesis at the bottom level, the instability. By his history this became symptomatic at the time of his lifting injury in September of 1990.

This answer demonstrates that Mr. Hornsby's injury was caused by lifting the reel, but it offers nothing regarding whether acts or omissions of the defendants were the proximate cause of that injury.

Later, Dr. Geibel provided some testimony regarding the lift belts:

Q. Okay. Now getting back to the belts, if they are to provide this support as you testified, how wide do they have to be to do an effective job?

A. I don't think there is any studies proving the amount of belts or use of them or degrees of width or anything that would predict any—any decrease in amount of injuries or anything along that nature.

Q. Okay. To followup on that just a little bit, Doctor, I get the impression that you don't think perhaps the belt is necessarily a preventative device; is that a fair statement?

A. I don't feel that it's as totally preventative as one would feel it would be. It doesn't hurt anything.

Q. Doesn't hurt but it doesn't necessarily help?

A. Correct.

Q. As far as if an accident of this nature were to occur and cause a three-level disc herniating, is that something that you think could have been prevented by the use of a belt such as we've been talking about?

A. I would be unable to comment. I don't think there is anything that would be available to say yes or no in that respect.

The testimony quoted above is the only evidence provided by Dr. Geibel regarding proximate cause and no other questions were posed to him on that issue. Dr. Geibel's testimony demonstrates that he has no opinion on the proximate cause issue. Clearly, this evidence does not constitute any legally sufficient evidence of causation.

Mr. Hornsby's co-worker, Larry Whidden, offered only the following testimony about the proximate cause issue:

Q. And what kind of equipment did you request from them?

A. Dollies for the cable, lift belts, something, you know, that would make the job a little bit easier, less strain, because the equipment, most of the equipment was on the heavy side.

Q. And in your opinion, would this equipment have assisted you in lifting these cable reels?

A. Lift belt would have eliminated this injury.

Mr. Walton (counsel for defense): Your Honor, I'm going to object to that. I think that calls for an expert opinion, that is well beyond any demonstrated knowledge he has.

The Court: Sustained.

Q. In any event, sir, do you believe this equipment you are talking about, the dollies and the safety belt, from your experience of lifting these cables, do you think that would have helped you?

A. Yes, it would have.

Q. All right.

Mr. Walton: Your Honor, again, I'm going to object as far as that calls for speculation, it's not something that he

has any specialized knowledge with regard to what lift belts and cable dollies did.

The Witness: Well, Your Honor, I've worked with those before.

The Court: Sir, I can handle it all by myself. Okay. Overruled.

The last answer demonstrates nothing more than Mr. Whidden's belief that the safety equipment would have helped Mr. Whidden and Mr. Hornsby do their jobs. It certainly does not provide even a scintilla of probative evidence connecting Mr. Hornsby's injury to the alleged negligence of the defendants.

Mr. Whidden's earlier answer, that the "lift belt would have eliminated this injury," would establish proximate cause if Whidden had been a properly qualified expert witness. However, Mr. Walton's sustained objection properly challenged Mr. Whidden's ability to provide expert testimony. Earlier testimony developed Mr. Whidden's expertise as a cable worker and as a person who has used safety equipment, but there is no testimony developing Mr. Whidden's expertise regarding the causal connection between the use of safety belts and the prevention of herniated discs. Just like an ordinary automobile driver is not qualified to testify that a seatbelt can prevent a herniated disc, Mr. Whidden was not qualified to testify that the lift belt would have prevented Mr. Hornsby's injury.

Other than the testimony detailed in this concurring opinion, there is no evidence even arguably linking Mr. Hornsby's injury to the acts or omissions of the defendants. Accordingly, I concur with the Court's judgment that "the court of appeals erred in holding that Hornsby carried his burden of proof on the causation issue."