NUMBER 13-03-099-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
LUCIANO ISLAS,                                                                          Appellant,
v.
CENTRAL READY MIX CONCRETE,                                            Appellee.



On appeal from the 206th District Court
of Hidalgo County, Texas.




M E M O R A N D U M O P I N I O N

     Before Chief Justice Valdez and Justices Yanez and Castillo

                             Opinion by Chief Justice Valdez
 
          Appellant, Luciano Islas, sued appellee, Central Ready Mix Concrete Company, and
others


 for injuries and damages he suffered while exiting the drum of a cement truck. The
jury rendered a verdict in favor of Islas and found twenty percent of the negligence was
attributable to Central Ready Mix. The jury awarded Islas $290,000 in damages plus pre-judgment interest. On Central Ready Mix’s motion, the trial court granted Central Ready
Mix a judgment notwithstanding the verdict and entered a take-nothing judgment. Islas
appeals from this judgment. We reverse and render. 
I. FACTUAL AND PROCEDURAL HISTORY
          Central Ready Mix owns and operates about thirty ready-mix cement trucks. A
ready-mix cement truck has a motor-driven rotating drum on its back that allows the
delivery of pre-mixed concrete slurry. The drums of these trucks must be periodically
cleaned and inspected. The cleaning process entails one or two workers entering the drum
with a jackhammer or similar tool to break off dried concrete from the blades or interior of
the drum. The workers dump the debris generated throughout the process by exiting the
drum and rotating it. 
          According to the owner of Central Ready Mix, this cleaning process is a very
dangerous activity. The primary hazards arise from the potential for the truck’s
components, particularly the drum, to move unexpectedly, as well as the risk of injury
occurring while the workers enter and exit the drum through the small access hatch on the
side of the drum. To prevent the drum from rotating and causing injury, chains and blocks
should be used to secure the drum in a single position, and the truck should be turned off
with the ignition key placed in a safe location, typically the pocket of the worker entering
the drum.
          Central Ready Mix used its own staff to clean out the drums until it made the
decision to contract with an outside company to perform the service. This decision was
made based on the recommendation of the Occupational Safety and Health Consultation
Program (OSHCON), a division of the Texas Workers Compensation Commission. Central
Ready Mix then employed Eugene Taylor d/b/a Major Concrete Equipment Company to
clean out the drums of its cement trucks. Taylor was a close personal friend and former
employee of Central Ready Mix. 
          The owner and operator of Central Ready Mix did not inquire whether Taylor had
any experience or knowledge of the risks inherent with cleaning drums on cement trucks. 
Central Ready Mix also did not inquire whether Taylor would use only personnel familiar
with the danger of the work and trained to deal with such danger. 
          Central Ready Mix did provide Major Concrete Equipment Company with a
document called “Confined Space in a Ready Mix Drum,” which described employees’
duties before, during, and after entering a ready-mix drum, and illustrated the required
“lock-out/tag-out” procedures implemented for safety. Central Ready Mix did not provide
Taylor or his employees with training regarding the procedures outlined in the document
or inquire whether Taylor trained his employees on these procedures. Taylor did not have
any written policies regarding cleaning the drums. 
          On January 14, 2000, Taylor and Albert Sandoval, another Major Concrete
Equipment Company employee, instructed Islas to assist another coworker, Juan Luis
Coronado, in cleaning and servicing one of Central Ready Mix’s ready-mix cement trucks. 
At that time, both Coronado and Islas were employed by Major Concrete Equipment
Company. Prior to working for this company, Islas worked mainly as a welder and had
never cleaned a ready-mix cement truck. Major Concrete Equipment Company had hired
Islas as a welder and did not train either Islas or Coronado regarding safety procedures
that should be employed when cleaning out a cement truck drum. Despite this lack of
training, Islas occasionally assisted his co-workers in cleaning out drums and, on a few
occasions, cleaned out a truck by himself. 
          On the date in question, Islas and Coronado worked together to clean the drum of
Central Ready Mix’s truck. No chains or blocks were used to prevent the rotation of the
drum during cleaning. At about 3:00 p.m., Coronado exited the drum, entered the cab of
the truck, and turned on the truck. When the engine started, the drum began to rotate. 
Islas, who was in the process of exiting the drum through the small access hatch at the
time, was crushed between the drum and the frame of the truck. Coronado turned off the
engine and called the foreman, Joe Martinez. Martinez, in an attempt to rotate the drum
backwards and free Islas, turned the truck back on, further crushing Islas’s body between
the drum and the frame. Islas was finally freed from the drum about thirty-five minutes
later and airlifted to a hospital. Islas suffered severe injuries as a result of the accident. 
          In the two years prior to the accident, Major Concrete Equipment Company had
cleaned out seventeen concrete drums for Central Ready Mix without incident. The trucks
were cleaned on Major Concrete Equipment Company’s premises. Cleaning concrete
drums was a small part of the company’s business.
          The jury was asked whether the task of cleaning the interior of a ready-mix concrete
drum is an inherently dangerous activity. The jury answered yes. The jury was also asked
whether the task was also a “peculiar risk.” The jury again answered yes. The jury
awarded Islas $290,000 plus pre-judgment interest and allocated the negligence of the
parties in causing the injury as follows: (1) seventy percent to Taylor d/b/a Major Concrete
Equipment Company; (2) twenty percent to Central Ready Mix; and (3) ten percent to Islas.
          Central Ready Mix filed a motion to disregard jury findings, motion for judgment
notwithstanding the verdict, and motion for entry of judgment. The trial court concluded
“there is no evidence of probative force to sustain the above-numbered findings of the jury
as to [Central Ready Mix]” and granted the motions, entering judgment in favor of Central
Ready Mix. This appeal followed.
II. ANALYSIS
          Islas contends on appeal that the trial court erred in granting Central Ready Mix’s
motion to disregard jury findings, motion for judgment notwithstanding the verdict, and
motion for entry of judgment. Because it is dispositive of this appeal, we address only the
trial court’s granting of the motion for judgment notwithstanding the verdict.
          A trial court may disregard a jury's findings and grant a motion for judgment
notwithstanding the verdict when there is no evidence upon which the jury could have
based its findings. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990); Walker
v. Ricks, 101 S.W.3d 740, 745 (Tex. App.–Corpus Christi 2003, no pet.). In other words,
a trial court may render a judgment notwithstanding the verdict if a directed verdict would
have been proper. Tex. R. Civ. P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818
S.W.2d 392, 394 (Tex. 1991).
          When reviewing an appeal of a judgment notwithstanding the verdict, this Court
employs a two-pronged inquiry. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989); Walker, 101 S.W.3d at 745. First, we examine the record for evidence supporting
the jury finding and ignore all evidence to the contrary. Sterner, 767 S.W.2d at 690. If
there is more than a scintilla of competent evidence to support the jury's finding, we will
reverse the judgment notwithstanding the verdict. Walker, 101 S.W.3d at 745. The
evidence supporting a finding amounts to more than a scintilla if reasonable minds could
arrive at the finding given the facts proved in the particular case. Burroughs Wellcome Co.
v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Walker, 101 S.W.3d at 745. Appellate courts
must consider the evidence and inferences as they tend to support the jury's verdict and
not with a view that would tend to support the judgment of the trial court. Mancorp, Inc.,
802 S.W.2d at 227-28; Walker, 101 S.W.3d at 745. Second, if the court determines that
no evidence supports the finding, it must determine from the record whether the contrary
proposition is established as a matter of law. Sterner, 767 S.W.2d at 690. If any evidence
of probative force supports a contested issue, the judgment notwithstanding the verdict
was improperly granted. See Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
          In this case, the ultimate finding of importance by the jury was its answer to the
negligence question: the jury found that the negligence of Central Ready Mix was a
proximate cause, in part, of Islas’s injuries. According to the jury charge, negligence, when
used with respect to the conduct of Central Ready Mix, was defined as “failure to use
ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises
condition that the owner or occupier knows about or in the exercise of ordinary care should
know about.” “Ordinary care” was defined as “that degree of care that would be used by
an owner or occupier of ordinary prudence under the same or similar circumstances.” 
“Proximate cause” was defined as “that cause which, in a natural and continuous sequence
produces an event, and without which cause such event would not have occurred . . . the
act or omission complained of must be such that a person using ordinary care would have
foreseen that the event, or some similar event, might reasonably result therefrom.” Central
Ready Mix disputed Islas’s assertion that its acts were a proximate cause of Islas’s injuries
and that it had a duty to Islas to avoid causing harm.
          Central Ready Mix focused on the foreseeability element of proximate cause. The
foreseeability component of proximate cause demands proof that Central Ready Mix
reasonably should have anticipated the danger to others created by its conduct. Doe v.
Boys Clubs of Greater Dallas, 907 S.W.2d 472, 477 (Tex. 1995). In the context of
proximate cause, foreseeability requires only the general danger to be foreseeable, not the
precise sequence of events that produced the harm. Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 785 (Tex. 2001). Central Ready Mix also argued it had no duty with
respect to Islas. With respect to existing dangers or defects, an owner or occupier has a
duty to inspect the premises and warn independent contractors of concealed hazards the
owner knows or should have known about. Shell Oil Co. v. Khan, 138 S.W.3d 288, 295
(Tex. 2004). Furthermore, an owner or occupier who is aware that an independent
contractor is not adhering to safety guidelines may have a duty to require corrective
measures to be taken or to cancel the contract. See Hoechst-Celanese Corp. v. Mendez,
967 S.W.2d 354, 357 (Tex. 1998) (per curiam); see also Tovar v. Amarillo Oil Co., 692
S.W.2d 469, 470 (Tex. 1985) (per curiam) (holding general contractor liable when it knew
of ongoing violation of specific contractual safety provision). 
          Here, Central Ready Mix employed Taylor to clean out the drums of its ready-mix
trucks. Central Ready Mix had decided to outsource the cleaning of its drums after an
inspection and recommendation to do so by a government workplace safety agency. 
Central Ready Mix’s safety director testified that he had never seen Taylor clean out a
drum, nor had he ever asked Taylor whether Taylor knew and understood the lock-out/tag-out procedures involved. The safety director also testified that Taylor had not signed
Central Ready Mix’s document outlining the lock-out/tag-out safety procedure until
December of 1998, despite the fact that his cleaning contract with Central Ready Mix had
commenced two months prior. 
          The owner of Central Ready Mix testified that he had never told Taylor how to clean
out the drums, nor did he make any effort to ensure or verify that Taylor would follow the
procedures outlined in the safety policy or train his employees to do so. The owner also
testified that before cleaning of the drums had been outsourced to Taylor, Central Ready
Mix employees had suffered multiple injuries involving mixers: “We have had people get
their fingers smashed. We have people get their hands scuffed . . . one man lost the tip
of his finger when a chute bit him.” Central Ready Mix reported nine workplace accidents
involving the mixers to the Department of Labor before cleaning of the mixers was
outsourced. The owner of Central Ready Mix also testified that if a person was not
properly trained regarding safety procedures, cleaning out the truck would be “very
dangerous.”
          Thus, there was more than a scintilla of evidence that Central Ready Mix should
have foreseen, through its past experience with injuries, that drum-cleaning would be
dangerous and that lock-out/tag-out safety measures would be required to alleviate this
danger. There is also more than a scintilla of evidence to show that Central Ready Mix
knew it was outsourcing a dangerous activity that could result in injury, and therefore had
a duty to protect its independent contractors, yet it failed to warn its independent contractor
of the hazards it would be facing. See Khan, 138 S.W.3d at 295. Central Ready Mix
clearly failed, as was its duty, to avoid increasing the risk of injury to third-parties involved
in the cleaning of its drums. See id. at 294.
          We conclude that this is more than a scintilla of evidence to support the jury verdict. 
Reasonable minds, if given these facts, could have arrived at the finding that Central
Ready Mix was negligent, in accordance with the definition of negligence presented to the
jury, and that this negligence was a proximate cause, at least in part, of Islas’s injuries. 
See Walker, 101S.W.3d at 745. Therefore, we conclude that the trial court erred in
overturning the jury verdict, and granting the judgment notwithstanding the verdict, see
Leitch, 935 S.W.2d at 118, and we affirm Islas’s issue on appeal. 
III. Conclusion
          Accordingly, we reverse the judgment of the trial court and render judgment as
follows: the verdict reached by the jury will stand, and Central Ready Mix is twenty percent
liable for the injuries suffered by Islas.
 
                                                                                                                                
                                                                                      Rogelio Valdez,
                                                                                      Chief Justice
 
Memorandum Opinion delivered and filed
this 24th day of February, 2005.