NO.
12-05-00085-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

CLASSIC OIL & GAS, INC.,           §                      APPEAL
FROM THE FOURTH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

ALLEN COOK,

APPELLEE   §                      RUSK
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Classic Oil
& Gas, Inc. (Classic) appeals from an adverse judgment entered after a jury
trial in Allen Cook’s suit against Classic for damages to his property.  In five issues, Classic asserts there is no
evidence to support the damage award and complains of charge error, improper
multiple recovery for torts in a contract cause of action, and miscalculated
interest.  We reverse and render.

 

Background








            Cook
owns the surface rights to land in Rusk County that is subject to an oil and
gas lease operated by Classic.  Classic
obtained a permit for operations on the land in the fall of 2002.  Cook filed suit against Classic on June 11,
2003, seeking $500,000.00 in damages for nuisance, trespass, and
negligence.  The jury found that Classic
was negligent, its actions created a nuisance, and it trespassed on Cook’s
property.  The jury awarded Cook
$120,000.00 to compensate him for timber damaged by Classic’s operations,
$750.00 to restore the property to the condition it was in before Classic’s negligence
occurred, $75,000.00 for loss of use and enjoyment due to Classic’s negligence,
$600.00 to restore the property to the condition it was in before Classic
created the nuisance, $75,000.00 for loss of use and enjoyment due to the
nuisance created by Classic, $600.00 to restore the property to the condition
it was in before Classic’s trespass, and $75,000.00 for the loss of the market
value due to Classic’s trespass.  The
court entered judgment on the jury’s verdict ordering Classic to pay Cook
$346,950.00 and prejudgment interest in the sum of $44,960.91, with interest at
the rate of ten percent per annum until paid.

 

Expert
Testimony

            In
its first issue, Classic contends there is no evidence to support the jury’s
finding of damages.  Classic argues that
Cook’s expert, Kenneth Frazier, was unqualified to testify on this subject, his
testimony was unreliable and irrelevant, and, therefore, his testimony was not
probative.  Because Frazier provided the
sole evidence of the amount of damages, the argument continues, Cook actually
presented no evidence to support the amount of damages found by the jury. 

Applicable Law

            In
reviewing a no evidence claim, the reviewing court must consider only the
evidence and inferences tending to support the trial court’s finding,
disregarding all contrary evidence and inferences.  Wal-Mart Stores, Inc. v. Gonzalez,
968 S.W.2d 934, 936 (Tex. 1998).  A no
evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.  Volkswagen of Am.,
Inc. v. Ramirez, 159 S.W.3d 897, 903 (Tex. 2004).  If the expert’s testimony does not survive
the no evidence challenge, we must determine whether in the remaining evidence
there is more than a scintilla of evidence that supports the challenged jury
finding.  Id. at 904.

            Rule
702 of the Texas Rules of Evidence permits a witness qualified as an expert
by  knowledge, skill, experience,
training, or education to testify on scientific, technical, or other
specialized subjects if the testimony would assist the trier of fact in
understanding the evidence or determining a fact issue.  Tex.
R. Evid. 702.  The party offering
the expert’s testimony bears the burden to prove that the witness is
qualified.  Gammill v. Jack
Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). The offering
party must demonstrate that the witness possesses special knowledge as to the
very matter on which he proposes to give an opinion.  Id.  Whether a witness qualifies as an expert is a
matter of judicial discretion.  Tex. R. Evid. 104(a); Broders v.
Heise, 924 S.W.2d 148, 151 (Tex. 1996). 


            Further,
expert testimony must be relevant and based on a reliable foundation.  Guadalupe-Blanco River Auth. v. Kraft,
77 S.W.3d 805, 807 (Tex. 2002).  In determining reliability, the trial court
should evaluate the methods, analysis, and principles relied on by the expert
in reaching the opinion and ensure that the opinion comports with applicable
professional standards and has a reliable basis in the knowledge and experience
of the discipline.  Gammill,
972 S.W.2d at 725-26.  The reliability
requirement focuses on the principles, research, and methodology underlying an
expert’s conclusions.  Kerr-McGee
Corp. v. Helton, 133 S.W.3d 245, 254 (Tex. 2004).  Expert testimony is unreliable if there is
too great an analytical gap between the data and the opinion proffered.  Gammill, 972 S.W.2d  at 726. 
Further, expert testimony is unreliable if it is no more than subjective
belief or unsupported speculation.  Kerr-McGee
Corp., 133 S.W.3d at 254. 
Opinion testimony that is conclusory or speculative is not relevant
evidence because it does not tend to make the existence of a material fact more
probable or less probable.  General
Motors Corp. v. Iracheta, 161 S.W.3d 462, 470-71 (Tex. 2005).  Such evidence is incompetent and will not
support a judgment.  Id. at
471.

Frazier’s Testimony

            Cook
presented Kenneth Frazier to testify as to the damages allegedly caused by
Classic’s operations.  Frazier received a
degree in petroleum engineering in 1958. 
He worked as an engineer for various companies from then until
1967.  At that point, he became an “Independent
Petroleum Consultant.”  He has worked in
the oil industry in the areas of drilling, producing, and consulting and as an
owner and an operator.  He has also done
appraisal work and evaluation of mineral properties.  As an operator, he has made estimates of
damage done to the surface by his own operations.  He has negotiated and settled damage claims
as an operator and had to arrive at values of standing timber.  Frazier testified that by experience and
education he is qualified to render such opinions.

            Frazier
visited Cook’s land briefly in 2000 for another matter and visited the land for
this case in December 2003 for a couple of hours.  He estimated the number of acres from which
timber was removed and the number of trees per acre.  He assumed that all land Classic used was
covered with timber, and he assumed that it all contained the same amount of
timber.  He did not know where the pipelines
were.  Cook’s father told him they were
not in the roadway.  Cook’s father also
told him Classic took clay from the building location and put it on the lease
road.  Frazier testified that there were
already logging roads on the property that Classic could have used to minimize
the damage.  Frazier assumed Classic
damaged the missing portion of the fence. 


            Frazier
testified that a lot of timber had been removed, pushed to the side, and
buried.  He estimated the number of
trees, 200 per acre for pulpwood and 200 per acre for saw logs, that had been
removed from the property.  To arrive at
the amount of timber and its value at the time the trees were cut, he used
values given to him by a forester.  He
assumed that, in the future, Cook would plant twice as many trees and that
ninety percent would survive over twenty-five years.  The survival rate was advised by the
forester.  He factored in an assumption
of thinning by Cook and applied a discount factor that he got from an
accountant to bring the future value of the trees back down to present value.

            Cook
also placed in evidence the report Frazier prepared, dated December 27,
2003.  This report was based on Frazier’s
two hour inspection of the property on December 8.  He determined that six acres were temporarily
damaged and the cost to plant trees on that acreage was $600.00.  The total damage due to construction, which
was based on the loss of four hundred trees, was $119,780.00.  Finally, permanent damage of nonrecoverable
use, that is, trees Cook would have harvested in the future, was
$62,800.00.  Thus, the total amount of
damages according to Frazier’s report was $183,180.00, all of which was based
on the value of trees that were destroyed and trees that presumably would be
planted and harvested in the future.

Discussion

            Frazier
is an engineer with extensive experience in the oil and gas industry.  He has negotiated and settled damage claims
and determined values of standing timber. 
However, he was asked to testify as to the value, both past and future,
of timber removed by Classic.  The record
does not indicate that he had any training in estimating timber damages.  His experience in the same general field did
not demonstrate that he possessed specialized knowledge about the value of
timber.  See Gammill, 972
S.W.2d at 719 (Witness experienced in designing and testing fighter planes and
missiles was not an expert in automobile design.); In re S.E.W.,
168 S.W.3d 875, 883 (Tex. App.–Dallas 2005, no pet.) (Expert in collecting
samples and interpreting test results was not an expert in the actual
testing.); Anthony Equip. Co. v. Irwin Steel Erectors, Inc., 115
S.W.3d 191, 206 (Tex. App.–Dallas 2003, pet. dism’d) (Owner of company who had
specialized knowledge about obtaining repairs and parts and selecting a repair
company did not have specialized knowledge of costs of repairs.); Montgomery
v. State, 83 S.W.3d 909, 911-12 (Tex. App.–Eastland 2002, pet. ref’d)
(Bank officer with extensive experience concerning vehicle loans and
determining values of vehicles was qualified as an expert on the issue of
values of vehicles.).  

            The
factors that go to the heart of Frazier’s calculations were outside his
expertise and provided by a forester and an accountant, neither of whom
testified at trial.  Frazier was not able
to testify as to the reliability or soundness of those factors because he did
not have the knowledge or experience necessary. 
He could only identify their sources, the experts from which they came.  Frazier was not qualified to testify about
the value of the timber removed from Cook’s property.  Therefore, his testimony as to valuation, the
amount of damages owed by Classic, has no probative worth.  See Gammill, 972 S.W.2d
at 719; Leitch v. Hornsby, 935 S.W.2d 114, 119 (Tex. 1996).  

            However,
even if Frazier were qualified, his testimony is flawed in that it is not
reliable.  Frazier failed to show why it
was permissible and reasonable for him to follow the advice of the forester and
accountant.  The underlying data supplied
by the forester and accountant could not be independently evaluated.  See Kraft, 77 S.W.3d at 808
(Review of underlying data revealed that the local sales the appraiser used to
value the land at issue were not comparable and therefore his opinion was not
reliable.)  The record does not ensure
that Frazier’s testimony, which was based on the advice of others, complied
with applicable professional standards or that it had a reliable basis in the
knowledge and experience of the discipline. 
In re S.E.W., 168 S.W.3d at 883-84.  Neither did Frazier testify that his method
for valuing timber, making assumptions after the fact and applying numbers
given by a forester and an accountant, is the commonly accepted method for
valuing timber.  See Gammill,
972 S.W.2d at 725-26.

            Frazier
did little more than guess at the amount of land cleared by Classic and the
number and size of trees growing there at the time.  He assumed the number of trees Cook would
plant in the future and the number he would cut out by thinning.  Frazier’s testimony on the value of the
timber amounts to mere conjecture.  Id.
at 727-28; Leitch, 935 S.W.2d at 119.  His unsupported conclusions do not constitute
evidence of probative force.  Iracheta,
161 S.W.3d at 471.  

            The
expert must have a sufficient basis for his opinion.  Tex.
R. Evid. 705(c).  Thus, even if
Frazier had been qualified to testify on the issue of the value of the timber
removed by Classic, his opinion did not rise to the level of competent
evidence.  Iracheta, 161
S.W.3d at 471.  There was no other
evidence in the record of the value of the timber removed by Classic.  Thus, there was no evidence to support the
jury’s findings on damages.  Leitch,
935 S.W.2d at 119-20.  Accordingly, Cook
is not entitled to recover against Classic. 
See Iracheta, 161 S.W.3d at 472.  We sustain Classic’s first issue.

 

Conclusion

            Because
Classic’s first issue is dispositive, we need not reach Classic’s remaining
issues.  See Tex. R. App. P. 47.1.  We reverse the trial court’s
judgment and render judgment that Cook take nothing from Classic.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

 

Opinion
delivered April 12, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)