COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-381-CV

 

 

IN THE MATTER OF E.G.H.

 

-----------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








In August 2005, the trial court adjudicated Appellant E.G.H.
delinquent for two acts of misdemeanor theft and placed him on probation.  In October 2006, the trial court found that
Appellant, who was then sixteen years of age, had violated the terms and conditions
of his probation by consuming alcohol, making a terroristic threat, and
committing aggravated assault.  The trial
court revoked Appellant=s probation,
modified his disposition, and committed him to the custody of the Texas Youth
Commission (TYC).  In one issue,
Appellant contends that the trial court abused its discretion by committing him
to TYC because the evidence is legally and factually insufficient to support
the findings required by section 54.05(m)(1) of the family code.[2]  Because we hold that the trial court did not
abuse its discretion by committing Appellant to TYC, we affirm the trial court=s order.

Section 54.05(m)(1) of the family code provides,

If
the court  . . . commits the child to
[TYC], the court:

(1)
shall include in the court's order a determination that:

 

(A)
it is in the child's best interests to be placed outside the child's home;

                (B) reasonable efforts were made
to prevent or eliminate the need for the child's removal from the child's home
and to make it possible for the child to return home; and

                (C) the child, in the child's home,
cannot be provided the quality of care and level of support and supervision
that the child needs to meet the conditions of probation . . . .[3]

The trial court included the statutorily required determinations in
the commitment order.  Appellant challenges
the determinations based on the weight of the evidence supporting them.








We review the commitment order modifying Appellant's disposition under
an abuse-of-discretion standard.[4]  As this court has explained before, 

To
determine whether a trial court has abused its discretion, we must decide
whether it acted without reference to any guiding rules or principles; in other
words, whether the act was arbitrary or unreasonable.  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.

 

An abuse of discretion also does not
occur where the trial court bases its decisions on conflicting evidence.  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court's decision.  In
appropriate cases, legal and factual sufficiency are relevant factors in
assessing whether the trial court abused its discretion.[5]








The evidence showed that Appellant lived with his grandparents, who
are his legal guardians.  At the time of
Appellant=s initial
disposition hearing in September 2006 on the amended motion to modify
disposition, he had already had several referrals to the juvenile probation
department and had been adjudicated for committing two misdemeanor thefts and
possessing a prohibited weapon.  The
probation department had already offered a variety of services to Appellant
while allowing him to remain in his homeCFamily Partnership Program, electronic monitoring, Family
Preservation, Tarrant County Advocate Program, intensive supervision program,
and drug education.  His probation
officer testified that he had been generally noncompliant regarding all
services. She specifically testified that Awhile he was in FPP last year he had three positive UA=S for marijuana.@  She also testified that the Resource Staffing
Committee denied him a placement because of his Aage, behaviors, behavior problems, and also the behavioral issues such
as aggression and fire-setting.@  She agreed that the juvenile
probation department does not have any programs left for Appellant.

The probation officer testified that there was not much structure or
discipline in the home when the grandfather was not home and that the Resource
Staffing Committee believed that the home lacked supervision.  The grandfather testified that he worked
three p.m. to eleven p.m. and did not know if he could switch shifts so that he
could be home when Appellant was home. The probation officer also testified
that Appellant has left home without permission on some occasions and that she
has reservations about the grandparents= ability to keep Appellant in compliance with terms and conditions of
probation.








At the initial disposition hearing, the grandfather testified that the
family had moved away from Athe boys who caused the problem@ and to a low crime area.  He
further testified that only he and his wife and Appellant would be living in
the new home.

The grandfather also testified that The Right Step, a drug and alcohol
treatment and behavior modification center, had a bed waiting for Appellant the
day after the hearing.  The trial court
continued the disposition hearing to allow Appellant the opportunity to seek
the inpatient treatment that his grandfather testified about.

When the court reconvened on October 18, the evidence showed that  The Right Step rejected Appellant for its
inpatient program.  The Right Step would
have accepted him into outpatient treatment, but the family left that facility
and took Appellant to the hospital because he was making suicidal
statements.  Appellant then spent about
three weeks at Cedar Crest Hospital and also spent time at Springwood after he
tried to cut himself.  Cedar Crest and
The Right Step both recommended intensive outpatient treatment.  During the intervening periods between
hospital stays, Appellant was confined in the detention center.  Appellant was confined, either in the
hospital or detention center, for almost four months before the October 2006
hearing.








During the six-week break the trial court gave him after the initial
disposition hearing, Appellant and his family still had not taken the necessary
steps to get him enrolled in school or to obtain a GED, and there was some
evidence that he engaged in huffing rubber cement while confined in Cedar Crest
Hospital.

The evidence showed that Appellant had no behavioral issues during
detention, that he interacted positively with the staff, that he does well in a
structured environment, and that he does poorly in the community.  His probation officer agreed that he needs
drug and alcohol treatment and would benefit from inpatient treatment, but she
opined that his biggest issues are his behavior and poor decisions.  She testified that Appellant needs a lot of
structure.








Additionally, Appellant has ADHD, for which medication has been
prescribed.  In the past, the medicine
made him sleepy at school, and he would get in trouble.  At the time of the initial hearing, he was
not taking the medication.  At the final
disposition hearing, the grandfather testified that A[Appellant was] supposed to be responsible for it, but [the
grandfather] usually give[s] him the medication.  Somebody usually makes sure, stands there and
makes sure he takes it when it=s available.@  The grandfather also testified that Appellant
misses some of his doses of medicine and that it later affects his
behavior.  The grandfather testified that
he would give Appellant his medicine everyday thereafter and make sure he took
it.  Appellant testified at the final
disposition hearing that he was currently taking his prescription medication.        Appellant=s arguments that his family has moved to a different environment and
the evidence of what Appellant and his witnesses say will occur in the futureChe will be supervised by his grandmother or stepuncle (about whom the
record reveals little) when the grandfather is not home, the grandfather is
willing to change his work schedule, Appellant will complete extensive
outpatient treatment, he will take his prescribed medications properly (when he
has not in the past), and he will pursue his GED (when he has not done so yet
when given the opportunity)Cdo little to counteract the overarching problems revealed by the
evidence of what Appellant has already done: 
Appellant lacks discipline and structure, he fails to take
responsibility for himself and his choices, and his choices have resulted in
violations of the law and what appears to be increasingly violent behavior,
toward others and himself.  We conclude
that the evidence is legally and factually sufficient to support the mandatory
findings.[6]








Given Appellant=s juvenile
history, his need for structure, the probation officer=s and staffing committee=s opinions that his home lacks discipline when his grandfather is not
home, and the many services offered to Appellant in the past which he has not
taken advantage of, we cannot hold that the trial court abused its discretion
by committing him to TYC.

We overrule Appellant=s sole issue and affirm the trial court=s order of commitment.

 

PER CURIAM

PANEL F:    DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  July 19, 2007











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. '
54.05(m)(1) (Vernon Supp. 2006).





[3]Id.





[4]In re
J.P., 136 S.W.3d 629, 632 (Tex. 2004).





[5]In re
C.J.H., 79 S.W.3d 698, 702 (Tex. App.CFort Worth 2002, no pet.).





[6]See
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Cont=l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996) (all providing
standard of review for legal sufficiency); Gonzalez v. McAllen Med. Ctr.,
Inc., 195 S.W.3d 680, 681 (Tex. 2006); Mar. Overseas Corp. v. Ellis,
971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965) (all providing standard of
review for factual sufficiency).