COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-381-CV

IN THE MATTER OF E.G.H.

-----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In August 2005, the trial court adjudicated Appellant E.G.H. delinquent for two acts of misdemeanor theft and placed him on probation.  In October 2006, the trial court found that Appellant, who was then sixteen years of age, had violated the terms and conditions of his probation by consuming alcohol, making a terroristic threat, and committing aggravated assault.  The trial court revoked Appellant’s probation, modified his disposition, and committed him to the custody of the Texas Youth Commission (TYC).  In one issue, Appellant contends that the trial court abused its discretion by committing him to TYC because the evidence is legally and factually insufficient to support the findings required by section 54.05(m)(1) of the family code.
(footnote: 2)  Because we hold that the trial court did not abuse its discretion by committing Appellant to TYC, we affirm the trial court’s order.

Section 54.05(m)(1) of the family code provides,

If the court  . . . commits the child to [TYC], the court:

(1) shall include in the court's order a determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for the child to return home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation . . . .
(footnote: 3)

The trial court included the statutorily required determinations in the commitment order.  Appellant challenges the determinations based on the weight of the evidence supporting them.

We review the commitment order modifying Appellant's disposition under an abuse-of-discretion standard.
(footnote: 4)  As this court has explained before, 

To determine whether a trial court has abused its discretion, we must decide whether it acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

An abuse of discretion also does not occur where the trial court bases its decisions on conflicting evidence.  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.  In appropriate cases, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion.
(footnote: 5)
 The evidence showed that Appellant lived with his grandparents, who are his legal guardians.  At the time of Appellant’s initial disposition hearing in September 2006 on the amended motion to modify disposition, he had already had several referrals to the juvenile probation department and had been adjudicated for committing two misdemeanor thefts and possessing a prohibited weapon.  The probation department had already offered a variety of services to Appellant while allowing him to remain in his home—Family Partnership Program, electronic monitoring, Family Preservation, Tarrant County Advocate Program, intensive supervision program, and drug education.  His probation officer testified that he had been generally noncompliant regarding all services. She specifically testified that “while he was in FPP last year he had three positive UA’S for marijuana.”  She also testified that the Resource Staffing Committee denied him a placement because of his “age, behaviors, behavior problems, and also the behavioral issues such as aggression and fire-setting.”  She agreed that the juvenile probation department does not have any programs left for Appellant.

The probation officer testified that there was not much structure or discipline in the home when the grandfather was not home and that the Resource Staffing Committee believed that the home lacked supervision.  The grandfather testified that he worked three p.m. to eleven p.m. and did not know if he could switch shifts so that he could be home when Appellant was home. The probation officer also testified that Appellant has left home without permission on some occasions and that she has reservations about the grandparents’ ability to keep Appellant in compliance with terms and conditions of probation.

At the initial disposition hearing, the grandfather testified that the family had moved away from “the boys who caused the problem” and to a low crime area.  He further testified that only he and his wife and Appellant would be living in the new home.

The grandfather also testified that The Right Step, a drug and alcohol treatment and behavior modification center, had a bed waiting for Appellant the day after the hearing.  The trial court continued the disposition hearing to allow Appellant the opportunity to seek the inpatient treatment that his grandfather testified about.

When the court reconvened on October 18, the evidence showed that  The Right Step rejected Appellant for its inpatient program.  The Right Step would have accepted him into outpatient treatment, but the family left that facility and took Appellant to the hospital because he was making suicidal statements.  Appellant then spent about three weeks at Cedar Crest Hospital and also spent time at Springwood after he tried to cut himself.  Cedar Crest and The Right Step both recommended intensive outpatient treatment.  During the intervening periods between hospital stays, Appellant was confined in the detention center.  Appellant was confined, either in the hospital or detention center, for almost four months before the October 2006 hearing.

During the six-week break the trial court gave him after the initial disposition hearing, Appellant and his family still had not taken the necessary steps to get him enrolled in school or to obtain a GED, and there was some evidence that he engaged in huffing rubber cement while confined in Cedar Crest Hospital.

The evidence showed that Appellant had no behavioral issues during detention, that he interacted positively with the staff, that he does well in a structured environment, and that he does poorly in the community.  His probation officer agreed that he needs drug and alcohol treatment and would benefit from inpatient treatment, but she opined that his biggest issues are his behavior and poor decisions.  She testified that Appellant needs a lot of structure.

Additionally, Appellant has ADHD, for which medication has been prescribed.  In the past, the medicine made him sleepy at school, and he would get in trouble.  At the time of the initial hearing, he was not taking the medication.  At the final disposition hearing, the grandfather testified that “[Appellant was] supposed to be responsible for it, but [the grandfather] usually give[s] him the medication.  Somebody usually makes sure, stands there and makes sure he takes it when it’s available.”  The grandfather also testified that Appellant misses some of his doses of medicine and that it later affects his behavior.  The grandfather testified that he would give Appellant his medicine everyday thereafter and make sure he took it.  Appellant testified at the final disposition hearing that he was currently taking his prescription medication. Appellant’s arguments that his family has moved to a different environment and the evidence of what Appellant and his witnesses say will occur in the future—he will be supervised by his grandmother or stepuncle (about whom the record reveals little) when the grandfather is not home, the grandfather is willing to change his work schedule, Appellant will complete extensive outpatient treatment, he will take his prescribed medications properly (when he has not in the past), and he will pursue his GED (when he has not done so yet when given the opportunity)—do little to counteract the overarching problems revealed by the evidence of what Appellant has already done:  Appellant lacks discipline and structure, he fails to take responsibility for himself and his choices, and his choices have resulted in violations of the law and what appears to be increasingly violent behavior, toward others and himself.  We conclude that the evidence is legally and factually sufficient to support the mandatory findings.
(footnote: 6)
 Given Appellant’s juvenile history, his need for structure, the probation officer’s and staffing committee’s opinions that his home lacks discipline when his grandfather is not home, and the many services offered to Appellant in the past which he has not taken advantage of, we cannot hold that the trial court abused its discretion by committing him to TYC.

We overrule Appellant’s sole issue and affirm the trial court’s order of commitment.

PER CURIAM

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  July 19, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Fam. Code Ann
. § 54.05(m)(1) (Vernon Supp. 2006).

3:
Id.

4:
In re J.P.
, 136 S.W.3d 629, 632 (Tex. 2004).

5:
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).

6:
See City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005); 
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999); 
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996) (all providing standard of review for legal sufficiency);
 Gonzalez v. McAllen Med. Ctr.
,
 Inc.
, 195 S.W.3d 680, 681 (Tex. 2006);
 Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998);
 Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965) (all providing standard of review for factual sufficiency).